Linus Jones Peck, Respondent, *v.* The State of New York, Appellant.

The board of managers of the Buffalo State Asylum for the Insane, appointed under and pursuant to the act of 1870 (Chap. 378, Laws of 1870) while representing the state in making contracts, does not represent it in any suit brought against the board, either for misfeasance or nonfeasance on the part of its members in the discharge of their duties.

A judgment against the board, therefore, is not binding upon or conclusive against the state.

Upon trial of a claim filed with the Board of Claims for an amount alleged to be due under contracts with said board of managers the only evidence produced by the claimant was a judgment against the board in proceedings by mandamus to compel it to adjust, determine and certify the amount due to said contractors, and the certificate as to the amount due made in pursuance of said judgment. *Held*, that the judgment was not binding upon or competent evidence against the state, nor was the certificate, there being nothing in the contract requiring the managers to give such a certificate.

The certificate showed that the amounts stated therein became due to the contractors about fourteen years before its date. *Held*, that assuming the certificate was competent evidence, the claim was barred by the Statute of Limitations (§ 7, chap. 205, Laws of 1883).

(Argued February 8, 1893; decided February 28, 1893.)

Appeal from award made by the Board of Claims September 8, 1891, in favor of plaintiff.

Under the act, chap. 378 of the Laws of 1870, in October, 1871, the board of managers of the Buffalo State Asylum for the Insane entered into a contract with Linus Jones Peck & Co. for furnishing stone for the contruction of the asylum; and in January, 1872, a further contract was made between the same

parties for cutting the stone to be used for the same purpose. In pursuance of those contracts, Linus Jones Peck & Co., before the year 1878, furnished and cut stone, and thus became entitled to large sums of money from the state, most of which were paid. In December, 1878, they instituted a proceeding by mandamus against the managers of the asylum to compel them to adjust and determine the amount due to them for materials delivered and work performed under the contract, and to make a certificate thereof. A writ of alternative mandamus was issued, to which the managers of the asylum made a return, and the issues joined were in March, 1887, referred to a referee; and the case was brought to trial in January, 1889, and after hearing the parties he made his report, in which he determined the amounts due to the firm, and directed that a judgment should be entered directing the asylum managers to immediately adjust and determine those amounts, and certify them as directed; and in pursuance of the judgment entered upon the report, and in obedience thereto, they certified to the several items which were found due to the firm. In October, 1890, Linus Jones Peck, as the survivor of the firm, filed his claim with the Board of Claims, in which he claimed the items thus certified by the board of managers, with the interest thereon; and the Board of Claims awarded to him $17,761.85 for the amount of those items, and for interest thereon the sum of $18,161.93, amounting in the aggregate to $35,878.78. The attorney-general, on behalf of the state, filed exceptions to the award and appealed from the same to this court.

Further facts are stated in the opinion.

*S. W. Rosendale, Attorney General,* for appellant. The Board of Claims erred in admitting in evidence the judgment-roll in the case of Peck against the Board of Managers of the Buffalo State Asylum (*Louisiana* v. *Jumel,* 107 U. S. 711; *Cunningham* v. *M. & B. R. R. Co.,* 109 id. 446; *Hans* v. *Louisiana,* 134 id. 1; *North Carolina* v. *Temple,* Id. 22; *Carr* v. *U. S.,* 98 id. 433; *Jones* v. *Campbell,* 104 id. 356; *U. S.* v. *Lee,* 106 id. 196; *Hagood* v. *Southern,* 117 id. 52;

*In re. Ayers,* 123 id. 443; *Pennoyer* v. *McConnaughy,* 140 id. 1; *People* v. *Dennison,* 84 N. Y. 272; *Corkings* v. *State,* 99 id. 491; *Rexford* v. *State,* 105 id. 229; *O'Hara* v. *State,* 112 id. 146; *Gates* v. *State,* 128 id. 221.) The judgment was not recovered in an action or proceeding between the parties to this claim. (*People* v. *Squires,* 110 N. Y. 666.) The certificate made by the board of managers was improperly received in evidence. (*Bookman* v. *Stegman,* 105 N. Y. 621; *Rolston* v. *Convers,* 120 U. S. 390.) The Board of Claims did not have jurisdiction of the claim filed herein. (Laws of 1883, chap. 205, § 7; *Danalds* v. *State,* 89 N. Y. 36; *Swift* v. *State,* Id. 52; *Belden* v. *State,* 103 id. 1; *Thomas* v. *Fleury,* 26 id. 26; *Nolan* v. *Whitney,* 88 id. 648; *Smith* v. *Alker,* 102 id. 87; *Vought* v. *Williams,* 120 id. 253; *Flaherty* v. *Miner,* 123 id. 382; Laws of 1883, chap. 255, § 7; *White* v. *Miller,* 78 N. Y. 393; *De Carricarti* v. *Blanco,* 121 id. 230; *Mansfield* v. *N. Y. C. & H. R. R. R. Co.,* 114 id. 331.) The former claim of McMaster and the award made thereon is a bar to this claim. (*Leavitt* v. *Walcott,* 95 N. Y. 212.)

*E. A. Clark* and *F. C. Peck* for respondent. Upon all questions in the case the same rules are applicable as if the suit were between individuals. (*McMaster* v. *State,* 103 N. Y. 547; 108 id. 555.) The claim is not barred by the Statute of Limitations. (*McMahon* v. *N. Y., etc., R. R. Co.,* 20 N. Y. 465; *Smith* v. *Briggs,* 3 Den. 73; *U. S.* v. *Robeson,* 9 Pet. 319; *Kihlberg* v. *U. S.,* 97 U. S. 398; *Schenke* v. *Rowell,* 7 Daly, 286–288; *Glacius* v. *Black,* 50 N. Y. 145; *Wychoff* v. *Meyers,* 44 id. 143; *McMahon* v. *N. Y. & E. R. R. Co.,* 20 id. 463; *Corkings* v. *State,* 99 id. 491.) The state is liable for interest. (*Reed* v. *R. G. Factory,* 3 Cow. 387; *Dana* v. *Fielder,* 2 Kenn. 40; *Still* v. *Hall,* 20 Wend. 51; *Adams* v. *F. P. Bank,* 36 N. Y. 255; *Van Rensselaer* v. *Jewett,* 2 id. 135.) It was argued below that interest is recoverable only from the time the amount due the claimant was certified by the board of managers, or from the time the claimant's right to maintain an action accrued. This is untenable. (*McMahon* v. *N. Y. & E. R. R. Co.,* 20 N. Y. 463.)

EARL, J. On the trial before the Board of Claims, the claimant introduced no evidence but the judgment in the mandamus proceeding against the Board of Managers of the asylum, and the certificate made by them as commanded by that judgment; and upon that evidence the Board of Claims based its award.

The important question to be determined upon this appeal, is, whether the judgment in the mandamus proceeding against the Board of Managers is binding upon, and estops the state. The learned counsel for the claimant, upon his argument in this court, has called our attention to no authority which sustains his claim that that judgment is *res adjudicata* against the state; and we know of no principle of law that gives it such force. The state was not a party to that proceeding, and in that proceeding the asylum managers did not represent the state. It was a proceeding against them to compel them to discharge what was claimed to be a duty resting upon them under the law of their creation and the contracts into which they had entered. While they represented the state in making the contracts with Linus Jones Peck & Co., they did not stand in the place of the state in any suit brought against them, either for misfeasance or nonfeasance in the discharge of the duties devolved upon them by law. No provision is found in any statute giving them authority to represent the state in any litigation, or giving the consent of the state to be bound by any adjudication to be made against them. A state cannot be sued in its own courts, except by its consent; and this rule is founded upon public policy of great importance, and it would be greatly impaired, and could be largely nullified, if the state could be bound by judgments rendered against its agents or officers. Such judgments may bind the officers and compel them to discharge their duties, and thus frequently they enable claim-ants to obtain payment of their claims against the state and other rights to which they are entitled by law. But the adjudication in such actions never estops the state on the principle of *res adjudicata*. And so it has been frequently held. (*James* v. *Campbell*, 104 U. S. 356; *Louisiana* v. *Jumel*, 107 id. 711;

*Cunningham* v. *Macon, etc., R. R. Co.,* 109 id. 446; *Hans* v. *Louisiana,* 134 id. 1; *North Carolina* v. *Temple,* Id. 22; *Pennoyer* v. *McConnaughy,* 140 id. 1; *People* v. *Dennison,* 84 N. Y. 272; *Corkings* v. *State,* 99 id. 491; *Rexford* v. *State,* 105 id. 229; *Gates* v. *State,* 128 id. 221.)

In *People ex rel.* v. *Squire* (110 N. Y. 666) we held that a judgment in a mandamus proceeding against the commissioner of public works of the city of New York did not bind the city for the reason that it was not a party to the litigation. In *Parmenter* v. *State,* recently decided in this court, we were of opinion, although it was not necessary there absolutely to announce it, that a judgment in a mandamus proceeding against the comptroller of the state was not *res adjudicata* against the state, and did not create an estoppel against it for the reason that it was not a party to the proceeding, although the attorney-general appeared there in defense of the comptroller. That the state is not bound by the adjudication in the mandamus proceeding is also shown by the case of *Carr* v. *U. S.* (98 U. S. 433).

But it is further said on behalf of the claimant that the state was bound by the certificate given by the managers of the asylum under the compulsion of the judgment, without reference to the circumstances under which it was made. There is nothing in the act by which the managers of the asylum were constituted which makes their certificate thus given binding upon the state or even evidence against the state. It was not a certificate based upon their judgment or upon any examination made by them, or upon any exercise of their discretion, but a certificate compelled by a judgment not binding upon the state and not evidence against the state. There is nothing in the contracts requiring the managers to give such a certificate. Under the first contract the firm of Linus Jones Peck & Co., were to be paid for certain kinds of stone delivered seventy-five per cent of the price thereof monthly, upon the estimate of the supervising architect or superintendent of the quantity delivered the month preceding such estimate; and the remain-

ing twenty-five per cent thereof monthly after the same shall
have been laid in the wall and measured and accepted by the
supervising architect and superintendent of the building; and
for other kinds of stone they were to be paid seventy-five
cents per cubic foot to be measured by the supervising
architect or superintendent and paid for at the end of each
month after the same had been delivered upon the ground
and approved by the supervising architect and superintendent.
The contract contains the further provision, that the board
of managers "hereby covenant and agree with the party of
the second part to estimate and measure all stone delivered
monthly after the delivery thereof as aforesaid, and to pay for
the same in accordance with the provisions of this contract
hereinbefore mentioned." Under the second contract for
cutting the stone it was provided that the board of managers
should cause monthly estimates to be made at the end of each
current month by the supervising architect and superintendent
of all work done or completed during the month, and to pay
ninety per cent of the amount thereof on the first of the
ensuing month, and, further, to have the work measured in the
wall, or so much thereof as should be laid monthly, at the end
of each current month as the work progressed, by the super-
vising architect and superintendent, and on the first of the
succeeding month pay in full for the work, less ninety per
cent previously paid upon the monthly estimate for the same
work, to the end that there might be final settlements monthly
of the work as it progressed until its completion.

It is very clear from these provisions in the contracts that the
estimates and measurements were to be made by the superin-
tendent and supervising architect. They were to inspect and
accept the work and material, and it was upon their estimates
and certificates that payments were to be made. There is no
provision whatever for certificates to be made by the man-
agers as a necessary preliminary to the payment of the amounts
due the contractors; and the practice under the contracts was
in accordance with these views. As the materials were deliv-
ered and the work performed, the supervising architect and

superintendent made the measurements and ascertained the amounts due for the work and materials and certified the same to the board of managers. The board of managers thereupon caused vouchers to be made for such measurements and estimates, and delivered the same to the firm from time to time, and made the payments of seventy-five per cent under the first contract and ninety per cent under the second contract as provided therein. The vouchers thus made and presented to the firm upon which payments were made to them were, after the payments, returned to the managers. It cannot, therefore, be said that the cause of action of the claimant first accrued when the certificate was executed by the board of managers under and in pursuance of the judgment in the mandamus proceeding. The payments of seventy-five per cent and ninety per cent were due to the firm when the material and work were accepted, measured and certified to by the supervising architect and the superintendent, and certainly when the vouchers were made by the managers upon which they made payments to the firm. When the remaining sums, to wit., twenty-five per cent under the first contract and ten per cent under the second contract, which are the sums mainly now in controversy, became due according to the terms of the contract, the contractors were entitled to payment of the same; and if upon their demand payment was refused, they could have instituted proceedings before the State Board of Audit and could thus have had their claim adjudicated, and could have obtained payment of any award made to them. Even if upon a hearing before the State Board of Audit it would have been requisite for them to have the vouchers showing the amounts due them for materials and work, those vouchers were in existence, either with the managers or with the state comptroller, and could easily have been procured for evidence before the State Board of Audit. But still further, having delivered the materials and performed the work, all of which had been accepted by the state, even if the contractors had needed the certificate of the managers as a condition precedent to the payments, they could have demanded it, and its unjust refusal would have enabled

them to prosecute their claim before the State Board of Audit without it. (*Thomas* v. *Fleury*, 26 N. Y. 26; *Nolan* v. *Whitney*, 88 id. 648; *Smith* v. *Alker*, 102 id. 87; *Flaherty* v. *Miner*, 123 id. 382.)

If we assume that the certificate of the asylum managers was competent evidence against the state of the amounts due upon the contracts, then it only shows what amounts became due to the contractors about fourteen years before its date, and does not establish that they became due for the first time at its date.

Assuming, therefore, that all these facts which appeared in the judgment rendered in the mandamus proceeding were properly in evidence, it is clear that this claim was barred by the Statute of Limitations long before it was filed in the Board of Claims. (Laws of 1883, chap. 205, § 7.) Unless the judgment in the mandamus proceeding is *res adjudicata* against the state, there is absolutely no basis upon which this award can rest, and having reached the conclusion that it is not, the award must be reversed and a new trial granted before the Board of Claims, costs to abide the event.

All concur, O'BRIEN and MAYNARD, JJ., not sitting.

Award reversed.