BISSELL v. STATE.

(Supreme Court, Appellate Division, Third Department. January 14, 1902.)

1. LIMITATIONS—SUSPENSION—CLAIMS AGAINST STATE—MATERIALS FOR STATE ASYLUM—EFFORTS TO COLLECT—MANDAMUS AGAINST ASYLUM MANAGERS—CONDITION PRECEDENT.

In a proceeding before the state board of claims for allowance of a claim for work and materials furnished for the construction of a state asylum under a contract with the managers, plaintiff sought to avoid the bar of the statute of limitations of six years by showing various efforts to collect the claim before it was barred. *Held,* that a mandamus proceeding against the managers to compel them to measure stone furnished as provided in the contract did not stop the running of the statute, since the state was not a party, and the managers were not authorized to represent the state in any litigation, and such proceeding was not a necessary preliminary to the presentation of the claim to the state board of audit.

2. SAME—BOARD OF AUDIT—JURISDICTION.

The fact that the appropriation for the construction of the asylum was a special fund out of which plaintiff's claim was to be paid, which was placed by law in charge of the managers, did not preclude plaintiff from presenting the claim to the state board of audit for adjudication, so as to toll the statute of limitations thereon.

3. SAME—ACTIONS BETWEEN STATE AND CLAIMANT.

Neither an action by the state against the parties who furnished the work and material, charging overestimates and overpayments, nor an action by such parties against the state for damages in stopping delivery of stone under the contract, had any effect in delaying the running of the statute upon the claim for such work and materials, since it was not litigated or directly involved in those actions.

4. SAME—ABOLITION OF BOARD OF AUDIT—TEMPORARY SUSPENSION.

Since Laws 1883, c. 205, abolishing the board of audit, which was created by Laws 1876, c. 444, and creating the board of claims, failed

to give the new board power to adjudicate plaintiff's claim, the statute of limitations was suspended during the time when there was no tribunal by whom it could be adjudicated.

**5. SAME—BOARD OF CLAIMS—JURISDICTION—REVIVAL OF STATUTE.**

After its temporary suspension by Laws 1883, c. 205, the statute began to run again against the claim the very moment when by Laws 1884, c. 60, the board of claims was given jurisdiction to adjudicate it.

**6. SAME—BOARD OF CLAIMS—FILING CLAIMS—LIMITED TIME—REASONABLENESS —POWER TO EXTEND—CONSTITUTIONAL LIMITATION.**

The requirement of Laws 1884, c. 60, that claims like plaintiff's should be presented on or before a certain date, was not unreasonable, as applied to plaintiff's claim, since the constitutional limitation of six years had run against it a month before the date set by the statute, and neither the board of claims nor the legislature could by any extension of time prevent it from being barred.

**7. SAME—BOARD OF CLAIMS—JURISDICTION—SPECIAL ENABLING ACT.**

Laws 1895, c. 254, specially authorizing the board of claims to adjudicate plaintiff's claim, could not interfere with the operation of the six-year limitation.

Appeal from board of claims.

Proceeding by Herbert P. Bissell, receiver, before the board of claims, for allowance of a claim against the state. From a judgment dismissing the claim, plaintiff appeals. Affirmed.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, SMITH, and CHASE, JJ.

F. C. Peck, for appellant.

John C. Davies, Atty. Gen., for the State.

KELLOGG, J. The claim of plaintiff is one of considerable magnitude, for work performed and material furnished under written contracts with the manager of the Buffalo Asylum between 1871 and August, 1877. The defendant admits all the facts as alleged by plaintiff, and this is an admission of merits in the claim, and plaintiff should have had judgment for a large sum if the defense of the statute of limitations is not a complete defense. As to the statute of limitations, the plaintiff urges that by reason of his efforts to collect the claim the claim has not become stale, and the six-year statute has not run. It is admitted that the last item of the claim accrued as early as August 6, 1877, and the proof shows that the larger part of the claim accrued many months prior to that date. The claim upon which the adjudication is here for review was presented to the board of claims in August, 1895. We have here at least 18 years to account for. What is it that suspended the running of the statute during that time? The record shows that the first step taken in the line of collection of the claim was a writ of mandamus to the managers of the asylum, taken out in December, 1878, to compel the managers to measure the stone furnished as by the contract provided. This mandamus proceeding was allowed to slumber until March, 1888. But this proceeding was not a proceeding between plaintiff and the state of New York, and the claim is against the state of New York. The state was not a party, and the court of appeals, by Earl, J., says in Peck v. State, 137 N. Y. 375, 33 N. E. 318, 33 Am. St. Rep. 739:

"While they [the managers] represented the state in making the contracts with Linus Jones Peck & Co., they did not stand in the place of the state in any suit brought against them either for misfeasance or nonfeasance in the discharge of the duties devolved upon them by law. No provision is found in any statute giving them authority to represent the state in any litigation, or giving the consent of the state to be bound by any adjudication to be made against them."

We must, I think, conclude that this mandamus proceeding against the managers did not have the effect of staying the running of the statute of limitations. It was not a proceeding or suit against the state. It was not a necessary step to be taken preliminary to the bringing of the matter before the state board of audit, where such claims could properly have been adjusted. In the case above cited (Peck v. State) it was by the court said:

"If upon their demand [upon the managers] payment was refused, they could have instituted proceedings before the state board of audit, and could thus have had their claim adjudicated, and could have obtained payment of any award made to them."

I do not think there is any force in the plaintiff's contention that because the appropriation for the construction of the asylum was a special fund out of which plaintiff's claim was to be paid, and by the law this fund was placed practically in charge of the managers, for such reason plaintiff was denied access to the state board of audit to have the claim adjudicated. The case of Peck v. State, supra, is authority against that proposition, and the claim there referred to is the claim now before us.

It is also difficult to see how the action brought by the state against plaintiff's assignors, Linus Jones Peck & Co., charging overestimates and overpayments, or the action by Linus Jones Peck & Co. against the state for damages in stopping the delivery of stone, can have any remote effect in delaying the running of the statute of limitations upon this claim. In neither of those actions was this claim litigated or directly involved. Until October, 1890, this claim was allowed to sleep. At that date it was first presented to the state board of claims. The board of audit was created in 1876 (chapter 444, Laws 1876), with power to adjudicate and adjust all claims against the state of this character. This board continued in existence until May 31, 1883, when the board of claims took its functions and duties. Chapter 205, Laws 1883. All that portion of plaintiff's claim which accrued prior to May 31, 1877, was barred by the six-year statute on May 31, 1883. This, as the record shows, included the entire claim, except a single item of $1,125, which plaintiff alleges accrued on or about August 6, 1877. The act of 1883 (chapter 205, Laws 1883), abolishing the board of audit and creating the board of claims, failed to give jurisdiction to the new board to adjudicate this claim and claims similarly circumstanced, and, while no tribunal existed competent to adjudicate the claim, the running of the statute was suspended; but, as we have seen, all of the claim was already barred except the item of $1,125, and there remained of the six years only two months and five days, as to this last item. In 1884 a law was passed (chapter 60, Laws 1884) which gave to the board of claims jurisdiction of this claim and others sim-

ilarly situated, provided they should be filed on or before July 1, 1884. This act took effect March 25th, and gave, therefore, three months and five days in which to file plaintiff's claim; and this term, added to the five years, nine months, and twenty-five days already run, makes six years and one month the statute of limitations had run against this last item on July 1, 1884. It seems to me clear that the moment the door was opened to any tribunal competent to hear and determine this claim the statute would begin immediately to run; and, even had there been no provision in this act of 1884 (chapter 60, Laws 1884) limiting the time in which such claims might be presented, the six-year conclusive bar against this claim would have been perfect on June 1, 1884. Hence there can be no force in the contention of plaintiff that this requirement of the act that such claims must be presented before July 1, 1884, is unreasonably short when applied to his case. This requirement did not curtail the time availabe to plaintiff in which to save his claim. · Six years was all the constitution permitted him in any case to have, and the board of claims could not have given him more, nor could the legislature. The enabling act of 1895 (chapter 254, Laws 1895), which authorizes the board of claims to adjudicate this claim, does not and cannot interfere with the operation of the six-year statute; and while this question does not appear to have been before the court of appeals in Peck v. State, 137 N. Y. 372, 33 N. E. 317, 33 Am. St. Rep. 738, for the reason that the board of claims was in that case bound by the two-year limitation,—the case having been tried in that tribunal before the enabling act was passed,—and while it is conceded that the claim is a meritorious one, the court has no power to give to plaintiff any relief.

The judgment of the board of claims should be affirmed. ₀

Judgment of the board of claims affirmed, with costs. All concur, except EDWARDS, J., not voting.