# Cases

# THIRD DEPARTMENT

IN THE

# APPELLATE DIVISION,

## March, 1902.

HERBERT P. BISSELL, as Receiver of LINUS JONES PECK & Co.,
Appellant, *v.* THE STATE OF NEW YORK, Respondent.*

*Statute of Limitations — what does not suspend its operation — claim against the
Buffalo Asylum for work and materials — it might have been presented to the State
Board of Audit — what statute conferring jurisdiction on the Board of Claims
gives a reasonable time for the presentation of a claim.*

The operation of the Statute of Limitations upon a claim against the State of
New York, for work performed and material furnished under written contracts
with the managers of the Buffalo Asylum, between 1871 and 1877, was not
suspended by the commencement, in 1878, of a proceeding by mandamus
against the managers of the Buffalo Asylum to compel them to measure stone
furnished under the contracts, as that proceeding was not a proceeding or suit
against the State of New York or a necessary step preliminary to bringing the
matter before the State Board of Audit of the State of New York, the body
which then had jurisdiction of such claims.

The fact that the claim was payable out of the appropriations for the construc-
tion of the asylum and that this fund was placed practically in charge of the
managers, did not operate to deprive the claimant of the right to have his claim
adjudicated by the State Board of Audit. The running of the statute against
the claim was not suspended by an action brought by the State against the
original claimants or by an action brought by the original claimants against
the State, which actions apparently related to the contracts upon which the
claim was based, but in neither of which the claim was litigated or directly
involved.

Chapter 60 of the Laws of 1884, which took effect March 25, 1884, and reme-
died the omission of chapter 205 of the Laws of 1883 (abolishing the Board of
Audit and creating the Board of Claims) to give the Board of Claims jurisdic-

*·Decided January 14, 1902.

tion to determine certain claims which had accrued prior to the passage of that act, by authorizing the court to adjudicate such claims, provided they should be filed on or before July 1, 1884, allows a reasonable time for the presentation of a claim which had accrued five years, nine months and twenty-five days prior to the passage of the act of 1883.

*Semble,* that if there had been no provision in the act of 1884 limiting the time in which the claim should be filed, the Statute of Limitations would run against the claim in two months and five days after the act of 1884 went into effect.

Chapter 254 of the Laws of 1895, authorizing the Board of Claims to adjudicate the claim in question, does not prevent the operation of the six years' Statute of Limitations.

*Semble,* that a statute attempting to effect such a result would be unconstitutional.

APPEAL by the claimant, Herbert P. Bissell, as receiver of Linus Jones Peck & Co., from a judgment of the Court of Claims of the State of New York in favor of the defendant, entered in the office of the clerk of said court on the 21st day of December, 1900, upon the decision of the court dismissing the claim on the ground that it was barred before presentation by the six years' Statute of Limitations.

*Fletcher C. Peck,* for the appellant.

*John C. Davies, Attorney-General,* and *George H. Stevens,* for the respondent.

KELLOGG, J.:

The claim of plaintiff is one of considerable magnitude for work performed and material furnished under written contracts with the managers of the Buffalo Asylum between 1871 and August, 1877. The defendant admits all the facts as alleged by plaintiff, and this is an admission of merits in the claim, and plaintiff should have had judgment for a large sum if the defense of the Statute of Limitations is not a complete defense. As to the Statute of Limitations the plaintiff urges that by reason of his efforts to collect the claim the claim has not become stale and the six-year statute has not run. It is admitted that the last item of the claim accrued as early as August 6, 1877, and the proof shows that the larger part of the claim accrued many months prior to that date. The claim upon which the adjudication is here for review was presented to the Board of Claims in August, 1895. We have here at least eighteen years to account for. What is it that suspended the running of the

statute during that time? The record shows that the first step taken in the line of collection of the claim was a writ of mandamus to the managers of the asylum, taken out in December, 1878, to compel the managers to measure the stone furnished as by the contract provided. This mandamus proceeding was allowed to slumber until March, 1888. But this proceeding was not a proceeding between plaintiff and the State of New York, and the claim is against the State of New York. The State was not a party and the Court of Appeals, by EARL, J., says in *Peck* v. *State* (137 N. Y. 375): "While they (the managers) represented the State in making the contracts with Linus Jones Peck & Co., they did not stand in the place of the State in any suit brought against them either for misfeasance or nonfeasance in the discharge of the duties devolved upon them by law. No provision is found in any statute giving them authority to represent the State in any litigation, or giving the consent of the State to be bound by any adjudication to be made against them." We must, I think, conclude that this mandamus proceeding against the managers did not have the effect of staying the running of the Statute of Limitations. It was not a proceeding or suit against the State. It was not a necessary step to be taken preliminary to the bringing of the matter before the State Board of Audit where such claims could properly have been adjusted. In the case above cited (*Peck* v. *State*) it was by the court said: "If upon their demand (upon the managers) payment was refused, they could have instituted proceedings before the State Board of Audit and could thus have had their claim adjudicated and could have obtained payment of any award made to them."

I do not think there is any force in the plaintiff's contention that because the appropriations for the construction of the asylum constituted a special fund out of which plaintiff's claim was to be paid, and by the law this fund was placed practically in charge of the managers, that for such reason plaintiff was denied access to the State Board of Audit to have the claim adjudicated. The case of *Peck* v. *State* (*supra*) is authority against that proposition, and the claim there referred to is the claim now before us.

It is also difficult to see how the action brought by the State against plaintiff's assignor, Linus Jones Peck & Co., charging

over-estimates and over-payments, or the action by Linus Jones Peck & Co. against the State for damages in stopping the delivery of stone, can have any remote effect in delaying the running of the Statute of Limitations upon this claim. In neither of those actions was this claim litigated, or directly involved. Until October, 1890, this claim was allowed to sleep. At that date it was first presented to the State Board of Claims. The Board of Audit was created in 1876 (Laws of 1876, chap. 444), with power to adjudicate and adjust all claims against the State of this character. This board continued in existence until May 31, 1883, when the Board of Claims succeeded to its functions and duties (Laws of 1883, chap. 205). All that portion of plaintiff's claim which accrued prior to May 31, 1877, was barred by the six years' statute on May 31, 1883. This, as the record shows, included the entire claim except a single item of $1,125 which plaintiff alleges accrued on or about August 6, 1877. The act of 1883 (Chap. 205) abolishing the Board of Audit and creating the Board of Claims failed to give jurisdiction to the new board to adjudicate this claim and claims similarly circumstanced, and while no tribunal existed, competent to adjudicate the claim, the running of the statute was suspended, but, as we have seen, all of the claim was already barred except the item of $1,125, and there remained of the six years only two months and five days as to this last item. In 1884 a law was passed (Chap. 60, amdg. Laws of 1883, chap. 205) which gave to the Board of Claims jurisdiction of this claim and others similarly situated, provided they should be filed on or before July 1, 1884. This act took effect March twenty-fifth and gave, therefore, three months and five days in which to file plaintiff's claim, and this term added to the five years nine months and twenty-five days already run, makes six years and one month the Statute of Limitations had run against this last item on July 1, 1884. It seems to me clear that the moment the door was opened to any tribunal competent to hear and determine this claim the statute would begin immediately to run, and even had there been no provision in this act of 1884 (Chap. 60) limiting the time in which such claims might be presented, the six-year conclusive bar against this claim would have been perfect on June 1, 1884. Hence there can be no force in the contention of plaintiff that this requirement of the act that such claims must be presented before July 1, 1884, is unreason-

ably short when applied to his case. This requirement did not curtail the time available to plaintiff in which to save his claim. Six years was all the Constitution permitted him in any case to have, and the Board of Claims could not have given him more, nor could the Legislature. The Enabling Act of 1895 (Chap. 254), which authorizes the Board of Claims to adjudicate this claim, does not and cannot interfere with the operation of the six years' statute; and while this question does not appear to have been before the Court of Appeals in *Peck* v. *State* (137 N. Y. 372) for the reason that the Board of Claims was in that case bound by the two years' limitation, the case having been tried in that tribunal before the Enabling Act was passed; and while it is conceded that the claim is a meritorious one the court has no power to give to plaintiff any relief.

The judgment of the Court of Claims should be affirmed.

All concurred, except EDWARDS, J., not voting.

Judgment of the Court of Claims affirmed, with costs.