[L. A. No. 894.   Department Two. — July 9, 1901.]

THE PEOPLE ex rel. J. W. SKELTON, Appellant, v. CITY OF LOS ANGELES, Respondent.

QUO WARRANTO — PLEADING — GENERAL AND SPECIFIC ALLEGATIONS — BURDEN OF PROOF. — In an action of *quo warranto*, the state may either charge the corporation defendant with the usurpation of a franchise in general terms, and thus throw the burden upon the defendant, or may allege the specific grounds or defects relied upon to show a usurpation, in which case the facts pleaded, if admitted, must be sufficient to sustain the charge of usurpation, and if denied, the burden of proof is upon the plaintiff.

ID. — COMPLAINT AGAINST CITY — USURPATION OF FRANCHISE — ANNEXATION OF TERRITORY — PARTICULAR DEFECTS — DEMURRER. — A complaint in *quo warranto* against a city, which charges it with the unlawful usurpation of franchises, jurisdiction, and control over territory claimed to have been annexed to the city, and which, after stating generally the steps taken to effect the annexation, proceeds to specify and allege the particulars in which the proceedings were invalid and insufficient to accomplish the annexation, must stand or fall, as against a general demurrer, upon the sufficiency of the particular facts alleged to defeat the annexation.

ID. — PETITION FOR ANNEXATION — NUMBER OF SIGNATURES — JURISDICTIONAL FACT — EVIDENCE IN PAIS — CONCLUSIVE ADJUDICATION. — Where the complaint does not set out a copy of the petition for annexation, nor show that it was so defective upon its face in any material matter as to deprive the council absolutely of jurisdiction, but merely avers that it was not signed by the requisite number of qualified electors, computed upon the number of votes cast at the last general election, that matter, though jurisdictional, is one of fact, to be determined by evidence *in pais*, the decision of which is submitted by the statute to the council, and its adjudication of the existence of that jurisdictional fact, not procured by extrinsic fraud, however erroneous it may be, is conclusive against collateral attack.

ID. — POWER OF INFERIOR BOARD TO ADJUDICATE ITS JURISDICTION. — An inferior board may determine conclusively its own jurisdiction or power, when depending, not upon allegations in a petition, but upon the existence or non-existence of matters *in pais*, to be established by evidence, by adjudicating the existence of the *facts*, upon the existence of which its jurisdiction or power depends.

ID. — CASE DISTINGUISHED. — The case of *In re Madera Irrigation District*, 92 Cal. 296,[1] is explained, and distinguished from the present case.

[1] 27 Am. St. Rep. 106.

ID. — ELECTION FOR ANNEXATION — FORMATION OF ELECTION PRECINCTS—
DIRECTORY STATUTES — HONEST ERROR — PREJUDICE NOT SHOWN. —
Statutes regulating the formation of election precincts at municipal
elections are directory, and not mandatory.  An honest error of the
council in establishing ward precincts only at a special election for
the annexation of territory to the city, instead of the usual voting-
places, where the statutory provisions as to special municipal elec-
tions are conflicting, does not vitiate the election, in the absence of
fraud, and of any showing that any one who desired to vote was
unable to do so.

ID. — FORM OF BALLOT — SUBSTANTIAL COMPLIANCE WITH STATUTE —
INTENTION OF VOTERS NOT DOUBTFUL. — Where the statute provid-
ing for the annexation of territory required to be placed "upon the
ballots the words 'For annexation' or 'Against annexation,' or
words equivalent thereto," a form of ballot using both words desig-
nated on the ballot, with a blank space after each, and a direction
to the voter to stamp a cross in the square opposite the proposition
indicating his choice, is a substantial compliance both with that
statute and with the Australian ballot system.  The form of the
ballot used could not have led to any doubt or uncertainty as to the
intention of the voters.

APPEAL from a judgment of the Superior Court of Los
Angeles County.   D. K. Trask, Judge.

The facts are stated in the opinion.

Tirey L. Ford, Attorney-General, Dunn & Crutcher, and
George P. Adams, for Appellant.

"In a proceeding prosecuted by the state, of the character
here inaugurated, it is sufficient to allege the ultimate fact,—
namely, that the defendants are exercising the franchise with-
out authority of law." (*People* v. *Reclamation District*, 121 Cal.
522; *People* v. *Cooper*, 139 Ill. 461; *People* v. *Clayton*, 4 Utah,
421; *State* v. *Dahl*, 65 Wis. 510; *People* v. *Peoria*, 166 Ill. 517.)
The burden of proof and of allegation is upon the defendant, to
show a full compliance with the law.   (Lawson's Rights, Rem-
edies, and Practice, sec. 4045; *People* v. *Clayton*, 4 Utah, 421;
*Flynn* v. *Abbott*, 16 Cal. 359; High on Extraordinary Remedies,
sec. 713; *People* v. *Peoria*, 166 Ill. 517.)   No board or tribunal
can obtain jurisdiction by its own recital that it has jurisdic-
tion.   (*In re Madera Irrigation District*, 92 Cal. 299;[1] *Kahn* v.
*Board of Supervisors*, 79 Cal. 400; *Lent* v. *Tillson*, 72 Cal. 422;
*People* v. *Peoria*, 166 Ill. 517; *Commissioners* v. *Griffin*, 134 Ill.

[1] 27 Am. St. Rep. 106.

330; *Kump* v. *People*, 141 Ill. 9;[1] *Carrico* v. *People*, 123 Ill. 198.) Proceedings for the annexation of territory must strictly comply with the requirements of the statute. (*Peru* v. *Bearss*, 55 Ind. 576; *Windman* v. *Vincennes*, 58 Ind. 484.)

Walter F. Haas, for Respondent.

By modern usage, the proceedings in *quo warranto* must conform to the general principles and rules of pleading which govern in ordinary civil actions. (High on Extraordinary Remedies, sec. 710; *People* v. *Stanford*, 77 Cal. 305; *People* v. *Dashaway Association*, 84 Cal. 114.) If a pleader, instead of pleading generally, sets out specific facts, those facts must show a cause of action. (*Castro* v. *Richardson*, 18 Cal. 478; *People* v. *Knox*, 38 Hun, 237.) The council, in passing upon the qualification of the electors, and the genuineness of their signatures, acted judicially, and its determination was conclusive. (*People* v. *Reclamation Dist.*, 121 Cal. 522; *Humboldt Co.* v. *Dinsmore*, 75 Cal. 604; *Farmers' Bank* v. *Board of Equalization*, 97 Cal. 318.)

HAYNES, C. — *Quo warranto.* In December, 1898, the city council of the city of Los Angeles received a written petition, under the provisions of the act of 1889 (Stats. 1889, p. 358), praying that certain territory adjacent to said city be annexed thereto and incorporated therewith, pursuant to which certain proceedings were had, which respondent claims effected the annexation of said territory. Appellant contends that these proceedings were void, and prays that the city be excluded from all corporate franchises, jurisdiction, and control within or over said territory.

A general demurrer to the amended complaint was sustained, and judgment thereon entered for defendant, and plaintiff appeals.

The complaint, after stating generally the steps taken to effect the annexation of said territory, and charging that the defendant has usurped and exercised, without any warrant or authority, the franchises, jurisdiction, and control over said territory, proceeds to specify and allege the particulars in which the said proceedings were invalid and insufficient to accomplish such annexation.

The mode of pleading in such cases is now by no means uniform. It is undoubtedly true that the state may charge a cor-

[1] 33 Am. St. Rep. 270.

poration with the usurpation of a franchise in general terms, and call upon it to allege and prove the facts showing its right, and thus place the burden upon the defendant. (*Palmer* v. *Woodbury*, 14 Cal. 43; *People* v. *Reclamation District*, 121 Cal. 522.) An information on behalf of the state may, however, allege the specific grounds or defects relied upon to show usurpation, instead of charging usurpation in general terms, and this mode of pleading has become quite common. (*People* v. *Dashaway Association*, 84 Cal. 114.) But if the facts upon which the alleged usurpation is based are pleaded by the state, the facts so pleaded must be sufficient to sustain the charge of usurpation if admitted, and if denied, the burden of proof is upon the plaintiff. In *People* v. *Sutter Street Ry. Co.*, 117 Cal. 611, it was said the relief might be had "by a proceeding strictly in form of a *quo warranto*, but there is no reason why the proceeding may not be by a regular action. In fact, there is now so little difference, that it is hardly worthy of discussion." The plaintiff, having assumed the burden of allegation and proof, must stand or fall upon the sufficiency of the facts alleged.

1. The act of 1889, under which these proceedings were taken, provides that the boundaries of any incorporated town or city may be changed, or new territory annexed thereto, upon proceedings being taken as therein provided. Touching the petition therefor, the statute provides: "The council, board of trustees, or other legislative body of any such municipal corporation, upon receiving a written petition therefor, containing a description of the new territory asked to be annexed to such corporation, and signed by not less than one fifth in number of the qualified electors of such municipal corporation, computed upon the number of votes cast at the last general municipal election held therein, must, without delay, submit to the electors of such municipal corporation, and to the electors residing in the territory proposed by such petition to be annexed to such corporation, the question whether such new territory shall be annexed to, incorporated in, and made part of such municipal corporation."

The complaint does not set out a copy of the petition, and the only defect therein alleged in the complaint or urged in argument is, that it was not signed by at least one fifth of the qualified electors of the city, computed upon the number of votes cast at the last general municipal election held therein.

The jurisdiction of the city council to order an election depends upon the presentation to it of such petition, signed by the requisite number of electors. Whether it was so signed was a question of fact, submitted by the statute to the decision of the council; and the question arising upon this branch of the case is, whether the adjudication of that question of fact by the city council is conclusive. The act might have provided that that question should be submitted to the decision of a court or jury; but it is obvious that the city council, if so authorized by the statute, is as capable of its correct decision as any tribunal that might have been named, and that such decision is, under the statute, as conclusive as though made by any other tribunal to which the legislature might have submitted it.

"An inferior board may determine conclusively its own jurisdiction or power, by adjudicating the existence of *facts*, upon the existence of which its jurisdiction or power depends. Where, however, the power depends, not upon the existence or non-existence of matters *in pais*, to be established by evidence, but upon allegations in a petition, a portion of the record, the question is not the same." (*In re Grove Street*, 61 Cal. 453; *Humboldt County* v. *Dinsmore*, 75 Cal. 604; *Farmers' etc. Bank* v. *Board of Equalization*, 97 Cal. 318.) In Wells on Jurisdiction, sec. 61, it is said: "Where the jurisdiction of even an inferior court is dependent on a fact which that court is required to ascertain and settle by its decision, such decision is held conclusive." Freeman, in his work on Judgments, in speaking of tribunals acting judicially, says (sec. 531): "As a general rule, whenever any person or persons have authority to hear and determine any question, their determination is, in effect, a judgment having all the incidents and properties attached to a similar judgment pronounced in any regularly created court of limited jurisdiction acting within the bounds of its authority. Hence, whenever any board, tribunal, or person is by law vested with authority to decide a question, such decision, when made, is *res judicata*, and as conclusive of the issues involved in the decision as though the adjudication had been made by a court of general jurisdiction."

All such adjudications are conclusive against collateral attack, and as the statute has not, in the case at bar, given any appeal or review by a higher tribunal, it follows that it can be vacated only in the manner and upon the grounds that would

justify the vacation of a judgment rendered by a court of record, and a mere error in the adjudication of a question of fact, not procured by fraud extrinsic or collateral to such question, is not a ground upon which it may be vacated, since, if it were, no adjudication of a question of fact would ever become final, so long as new evidence could be had, or a different conclusion be reached upon the same evidence.

Appellant makes no suggestion that the petition was in any manner defective upon its face. If it had been defective in any material matter required by the statute, the council would not have acquired jurisdiction, and the defect, appearing upon the face of the record, would have been fatal in this proceeding; and in such case appellant's citation from *In re Madera Irrigation District*, 92 Cal. 296,[1] that "no board or tribunal can obtain jurisdiction by its own recital that it has jurisdiction," would have been in point. Appellant also quotes from the case last above cited the following: "Nor should this jurisdiction be held to attach, whatever court may have ruled that the petition was signed by a majority, when in fact it was signed only by a minority of the owners designated by the statute." This quotation, unexplained, sustains appellant's contention. But that was an action brought under the act of 1889 (Stats. 1889, p. 212), for a confirmation of the proceedings for the issuance and sale of bonds of said irrigation district, and which expressly declared that "the court shall have power and jurisdiction to examine and determine the legality and validity of . . . each and all the proceedings for the organization of said district, . . . from and including the petition for the organization of the district." (Stats. 1889, p. 213, sec. 5.) The proceeding was special, and was so declared by the act. (See *People* v. *Reclamation District*, 121 Cal. 525.)

2. Appellant also contends that the council did not properly divide the city into election precincts for the purposes of said election, in that each of the nine wards of the city was designated as a precinct, thus: "First Ward, Precinct A"; "Second Ward, Precinct A," etc.; that each of said precincts, except two, contained more than six of the general election precincts as the same existed for the holding of the last preceding general state election, at which time the city contained eighty-four precincts.

Appellant refers to the provisions of the city charter, but

[1] 27 Am. St. Rep. 106.

does not fully state them. The charter provides for special elections in certain specified cases, and adds, "or for other purposes not especially provided for." (Stats. 1889, p. 504, sec. 197.) The charter further provides (sec. 200) that the council shall, by ordinance, order the holding of all elections, and shall specify "a place or places within the limits of each ward for the holding of such election," or may "divide any of the wards into two or more precincts"; and, after making many other provisions, declares that " all elections shall, in all other respects, be conducted and held in accordance with the provisions of the laws of the state for the holding of general elections in effect at the time." (Stats. 1889, sec. 202.)

The act of 1889 providing for the annexation of new territory makes it the duty of the legislative body of the municipality to designate in the notice of election the voting precinct or precincts and the polling-places in the territory proposed to be annexed, "and also in such municipal corporation. And such place or places shall be that or those commonly used as voting-places within such municipal corporation, and also that or those commonly used in such new territory, if any such there be."

Another statutory provision, and the one apparently relied upon, is an act passed March 4, 1899 (Stats. 1899, p. 63), entitled "An act in relation to municipal elections, where the same are held separate from general state elections, and elections held under the authority of section 8 of article XI of the constitution, to elect boards of freeholders, or to vote upon proposed charters or upon amendments to existing charters," and to repeal the act of March 31, 1897.

This act provides that municipalities may be divided into municipal election precincts as often as occasion may require, and "in establishing such municipal election precincts said board may consolidate the precincts which existed for the holding of the last preceding general state election to a number not exceeding six for each municipal election precinct."

As to which of these conflicting provisions should have been followed, even a city council might err. Nor do I think it necessary to decide that question. These provisions have been stated mainly in illustration of the conclusion that as to the formation of voting precincts, such provisions are directory, merely; so that if it be conceded that the wrong statute was followed, or that neither was strictly followed, the election was

not void. Such provisions are directory, not mandatory. It is not declared that a failure to observe the direction of the statute as to the number or size of the precincts shall invalidate the election. "It is only those provisions of the statutes relating to the time and place of holding elections, the qualifications of voters, and such others as are expressly made essential prerequisites to the validity of an election, that are held to be mandatory; all others are directory, merely; and a failure to observe them, caused by honest ignorance or mistake, and not resulting in manifest fraud, does not afford ground for rejecting the entire vote of a precinct." (*Russell* v. *McDowell*, 83 Cal. 77; *Tebbe* v. *Smith*, 108 Cal. 111.[1])

In the recent case of *Fragley* v. *Phelan*, 126 Cal. 397, it was said: "The provision in section 1129 of the Political Code, that the precinct shall be sufficient 'to make the number of votes polled at any one precinct to be not more than two hundred, as nearly as can be ascertained,' is not to be regarded as jurisdictional, but is merely directory. . . . It is not claimed that the board acted in bad faith, or that any citizen was deprived of his vote, the only claim being, that by reason of the registered vote within each of said precincts being much greater than two hundred, the board must be presumed to have abused its discretion in consolidating the precincts in the manner it did." Fraud is not charged, nor is it alleged that any one who desired to vote was unable to do so because of the size of the precincts, or for any reason.

3. Appellant also contends that the ballots used at said election did not conform either to the Australian ballot system, or to the provisions of the act of 1889 which provide for the annexation of territory to municipal corporations.

Said act provides that electors shall be invited to vote upon such proposition, "by placing upon the ballots the words 'For annexation,' or 'Against annexation,' or words equivalent thereto."

The form of the ticket used was as follows:—

To vote, stamp a cross (x) in the square opposite the proposition indicating your choice.

| 1. | For annexation ........................ | |
| 2. | Against annexation...................... | |

[1] 49 Am. St. Rep. 68.

This was a substantial compliance with the act of 1889, which, while specifying certain words in which the desire of the voter might be expressed, waived a technical compliance with the direction by adding, "or words equivalent thereto." This ticket uses the words expressed in the statute, while also adopting the method of the Australian system in designating the voter's choice between the alternative propositions. "It [the ballot] should be read in the light of all the circumstances surrounding the election and the voter, and the object should be to ascertain and to carry into effect the intention of the voter, if it can be determined with reasonable certainty. The ballot should be liberally construed, and the intendments should be in favor of a reading and construction which will render the ballot effective, rather than some conclusion which will, on a technical ground, render it ineffective." (*Behrensmeyer* v. *Kreitz*, 135 Ill. 595.) "If a ballot expresses the intention of the voter without a reasonable doubt, it is sufficient, though technically inaccurate." (*Hawes* v. *Miller*, 56 Iowa, 395.) The form of the ballot used could not have led to any doubt or uncertainty as to the intention of the voters, and it is not alleged that it did. The judgment appealed from should be affirmed.

Gray, C., and Chipman, C., concurred.

For the reasons given in the foregoing opinion the judgment appealed from is affirmed.          Henshaw, J., McFarland, J.

Temple, J., concurred in the judgment.