[Sac. No. 1158. Department One.—September 25, 1905.]

## THE PEOPLE ex rel. D. Russell, Appellant, v. TOWN OF LOYALTON, Respondent.

MUNICIPAL CORPORATIONS—ORGANIZATION—COMPLIANCE WITH STATUTE —SUFFICIENCY OF PETITION.—The organization of a municipal corporation is sufficiently established, where upon the face of the record of the incorporation proceedings there appears to have been a literal compliance with every statutory requirement, and the petition states everything required by the statute. The petition

is not defective in omitting a statement not required that there is a "town" within the proposed boundaries.

ID.—ELECTION UPON HOLIDAY.—Under the statute forbidding merely the transaction of certain "judicial business" on certain holidays, including Admission Day, the ordering of an election in the "proposed corporation for the purpose of determining whether the same shall become incorporated," to be held on Admission Day, and which was held on that day, does not invalidate the election, which is not included within the statutory prohibition.

ID.—BOUNDARIES INCLUSIVE OF FARMING LAND—POWER OF SUPERVISORS —FINAL DETERMINATION.—Under the provisions of the Municipal Incorporation Act, that "any portion of a county containing not less than five hundred inhabitants" may become incorporated, a newly proposed municipal incorporation, including, in addition to a village containing less than five hundred inhabitants, about fifty square miles of farming land, with a total population of seven hundred, was within the power of the supervisors, who may finally determine the question whether the territory proposed to be included, should be brought within municipal control.

ID.—POSTING NÓTICES OF ELECTION—ERROR IN ORDER—COMPLIANCE WITH LAW.—Where the law only requires four notices of election to be posted within the boundaries of the municipal corporation, an error in the order of the supervisors in requiring the posting of a fifth notice at a place which was afterwards discovered to be outside of the boundaries, does not vitiate it, it appearing that a literal compliance with the order resulted in a compliance with the law.

ID.—QUALIFICATION OF SIGNERS OF PETITION — NUMBER OF INHABITANTS—CONCLUSIVE DETERMINATION OF SUPERVISORS.—The determination of the supervisors as to qualifications of the signers of the petition as resident within the proposed boundaries, and as to the number of inhabitants therein, is final and conclusive upon those questions of fact; and their decision could only be vacated upon such a showing of extrinsic or collateral fraud as would justify the vacation of the judgment of a court of record.

ID.—ILLEGAL VOTES NOT AFFECTING RESULT — MISTAKE IN POLLING-PLACE.—Where, owing to a misconception as to the precise location of a boundary-line of the proposed corporation, five non-residents of the territory actually included voted at the election, without fraud, and the rejection of their votes as illegal would not affect the result of the election, such mistake is immaterial.

ID.—BURDEN OF PROOF—FINDING AS TO ILLEGAL VOTES.—The burden was upon the appellant to show that other illegal votes were cast; and in the absence of such proof a finding that there were no other illegal votes than those so cast will not be disturbed.

ID.—QUO WARRANTO—EVIDENCE—MISTAKE OF SUPERVISORS.—In an action of *quo warranto* to determine the validity of the municipal corporation, evidence that the supervisors mistakenly thought that

the polling-place finally shown to be outside of the boundaries was within them when they heard the petition for incorporation and determined the eligibility of the signers, was properly rejected as immaterial.

APPEAL from a judgment of the Superior Court of Sierra County and from an order denying a new trial. Stanley A. Smith, Judge.

The facts are stated in the opinion of the court. ·

U. S. Webb, Attorney-General, for People; and John B. Irish, for Relator, Appellant.

Frank R. Wehe, and F. D. Soward, for Respondent.

ANGELLOTTI, J.—This action was brought for the purpose of determining the right of defendant to hold and enjoy the franchise and to exercise the powers of a·municipal corporation of the sixth class, which it assumes to be under certain proceedings had under the general law providing for the organization, incorporation, and government of municipal corporations. (Stats. 1883, p. 93, and amendments thereto). Defendant had judgment, and this is an appeal by plaintiff from such judgment and from an order denying the motion for a new trial.

1. Upon the face of ·the record of the incorporation proceedings, there appears to have been a literal compliance with every statutory requirement.

It is suggested that the petition for incorporation does not state that ·there is any "town" within the proposed boundaries, but under our statute no such statement is required. The petition stated everything required by the statute.

The record shows that the election in the "proposed corporation for the purpose of determining whether the same shall become incorporated" was ordered by the board of supervisors to be held on the ninth day of September, 1901, and was held on said day. That day being a holiday under the provisions of our statute (Pol. Code, sec. 10), it is claimed that no valid election could be held thereon. Appellant has pointed out no statute prohibiting the holding of such an election on a holiday, and we know of none. There is a statutory prohibition as to the transaction of certain "judi-

cial business'' on certain holidays, including September 9th (Code Civ. Proc., sec. 134), but the holding of an election does not come within that term. In the absence of any such statutory prohibition we know of no reason why the election could not be held on a day set apart by statute as a holiday. The rule appears to be that on all such days all transactions not within the statutory prohibitions may be carried on as on any other day. (27 Am. & Eng. Ency. of Law, 2d. ed., p. 414.)

2. The complaint contained allegations as to the large area of land included within the boundaries of the supposed corporation and the character thereof, the object thereof being to show that the great bulk of the land should not have been included, being uninhabited and suitable only for farming, timber, and grazing purposes. The court found that the land consisted of about fifty-two square miles of territory, with a population of about seven hundred. The evidence showed that the village proper was a small collection of houses, about forty in number, with a population of less than five hundred, and that the remainder of the vast acreage included was of the character alleged.

It is contended that it is essential to incorporation under the provisions of our law that there should be a town or village of at least five hundred inhabitants, and that it was never contemplated by the framers of our statute that land of the character alleged, having no natural connection with the town or village, and no adaptability to village purposes, might be included.

In view of the provisions of our statute upon these matters, it must be held that there is no force in this contention. While the good policy of permitting the inclusion in the incorporation of a town of an unlimited amount of outside territory having no natural connection therewith and in no way adapted for town or city government may well be questioned, it must be admitted that the matter is one wholly within the control of the legislative department of the state, except so far as such power may be limited by constitutional provisions. The constitution contains no intimation whatever as to the minimum of population essential to incorporation, nor does it attempt to limit the power of the legislature in providing for the determination of the question as to what

shall constitute municipal territory. The only constitutional restriction is that municipal corporations shall not be created by special laws, and the legislature is required by general laws to provide for the incorporation, organization, and classification of cities and towns. (Art. XI, sec. 6.) This leaves the questions as to population, extent, and character of territory, entirely with the legislative department. When we come to a consideration of the General Municipal Incorporation Act, we find that it is expressly provided that "*any portion of a county* containing not less than five hundred inhabitants, and not incorporated as a municipal incorporation, may become incorporated" as a municipal corporation thereunder, upon complying with the provisions thereof. (Stats. 1883, p. 93.) The board of supervisors of the county is given certain power in regard to changes in the boundaries proposed, but no other tribunal may interfere. The question as to whether territory proposed to be included should be brought under municipal control is left to be finally determined by the board of supervisors.

The question here discussed is not a new one in this state. It was definitely decided by this court in *People* v. *Riverside,* 70 Cal. 461, [11 Pac. 759], where territory comprising some fifty square miles, much of which was apparently not at all adapted to municipal purposes, was included. That the law here is as above stated was also recognized by this court in *People* v. *Linden,* 107 Cal. 94, 100, [40 Pac. 115], where the territory included comprised forty-eight square miles.

We have found no decision from any other state that is applicable under the language of our statute. Where the tribunal charged with the duty of determining the boundaries is limited by language of the legislature which may reasonably be construed as applicable only to towns and villages proper, and adjacent territory naturally connected therewith, a very different question is presented, but no such limitation can be found in the broad words used in our statute.

We do not decide whether or not there might be such fraud in the matter of fixing boundaries as would be held to invalidate the proceedings, for there was no sufficient allegation of fraud in this respect, and absolutely no proof of any such fraud.

3. The board of supervisors ordered notices of the election to be posted at five specified places, and they were posted accordingly. Subsequent to the election it was discovered that one of the specified places,—viz., "Lewis Mill,"—was not within the boundaries of the proposed corporation. The law, however, requires only four notices to be posted within such boundaries. (Mun. Corp. Act, sec. 2.) As the order of the board was literally complied with, and as such literal compliance resulted in four notices being posted within the boundaries, the notice given was in all respects as required by law.

4. It is claimed that the averment in the petition for incorporation to the effect that there were seven hundred inhabitants in the territory proposed to be incorporated was false, and that there were not exceeding three hundred and fifty inhabitants therein. It is also claimed that of the fifty-seven persons who signed said petition, thirty-two were not residing within the boundaries of such proposed incorporation. The Corporation Act requires that there must be not less than five hundred inhabitants, and that the number of inhabitants must be stated as nearly as may be in the petition, and it also requires the petition to be signed by not less than fifty electors of the county, residing within the territory proposed to be incorporated.

By express provision, the board of supervisors is required, upon the hearing, to "ascertain and determine how many inhabitants reside within such boundaries." The board is further required, of course, as a prerequisite to exercising jurisdiction, to determine whether or not the petition, apparently sufficiently signed, has been in fact signed by a sufficient number of resident electors of the district. The record shows that in this matter the board of supervisors heard the petition, and expressly found that each and all of the allegations contained in the petition and affidavit annexed thereto were true. This necessarily included the finding that each of the signers of the petition was an elector of the county and resident of the proposed corporation. The board further expressly found the number of inhabitants thereof to be seven hundred. The law provides for no appeal from the decision of the board upon such questions.

Under what appears to be the settled law of this state, the

decision of the board of supervisors upon both these questions of fact must be held to be conclusive here. There was no allegation to the effect that the decision was induced by any extrinsic or collateral fraud, and in the absence of any right of appeal or review by a higher tribunal such decision could be vacated only upon grounds which would justify the vacating of a judgment rendered by a court of record. It will only be necessary in this connection to refer to the case of *People* v. *Los Angeles,* 133 Cal. 338, [65 Pac. 749], where the whole matter was thoroughly discussed and the law applicable very clearly stated.

5. At the election there were seventy-nine votes for incorporation and only thirty against. It was urged by appellant that more than one half of the votes were cast by persons residing without the boundaries of the proposed corporation. The trial court found that only five votes were cast by persons residing without the boundaries of the proposed town of Loyalton, and that except as to such five votes no person was permitted to vote at such election who had not resided within the limits of the proposed corporation for at least sixty days next preceding said election.

It appears that at the time of the election, Lewis Mill, together with certain buildings and places of abode for many who there worked, was generally supposed to be within the boundaries of the proposed corporation, while, as a matter of fact, it was about one half-mile east thereof. It was under this supposition that whatever votes were improperly cast were deposited by the voters and received by the election board, and there is no pretense that there was any fraud in the matter upon the part of anybody.

It may be assumed, for the purpose of this decision, that every illegal vote was cast for incorporation. The question, then, is as to whether the illegal votes were sufficient in number to make any difference in the result if they be deducted. As we have said, the court below found that there were not to exceed five illegal votes. We have carefully examined the evidence adduced upon this question, and we cannot say that the finding of the trial court is not sufficiently sustained thereby so far as is necessary to support the judgment. There can be no doubt that upon this proposition the burden of proof was on the plaintiff. The evidence contained in the

record is not at all clear and convincing as to the actual residence of many of the voters. It may be that such evidence would compel the conclusion that some, in addition to the five found by the trial court, were illegal voters by reason of non-residence, but we are satisfied that we cannot, upon that evidence, disturb the finding to the extent of holding that there is no support in the evidence for the conclusion that there was not a sufficient number of such illegal votes cast to affect the result, even though all such illegal votes be deducted from the total vote cast for incorporation.

6. The court was amply justified in holding that the allegations of the complaint to the effect that the Loyalton Lumber Company and its officers in any way coerced its employees to vote for incorporation were not sustained by the evidence.

7. We have examined the various rulings complained of relative to the admission and exclusion of evidence and find no error. Much reliance is based upon the fact that the court refused to permit plaintiff to show that the members of the board of supervisors mistakenly thought that Lewis Mill was included within the proposed boundaries at the time they heard the petition for incorporation and determined as to the eligibility of the signers thereof and as to the population, but we think such proposed evidence was entirely immaterial. As we have seen, it was for the board of supervisors to finally determine both of these matters from the evidence submitted to them, and neither the evidence nor the mental processes by which their conclusion was reached are reviewable here.

What has been said disposes of all the points requiring notice.

The judgment and order are affirmed.

Shaw, J., and Van Dyke, J., concurred.