[Civ. No. 8613. Second Appellate District, Division Two.—July 15, 1933.]

THE PEOPLE ex rel. HARRIET R. STRONG et al., Respondents, v. CITY OF WHITTIER et al., Appellants.

318

R. T. Walters, City Attorney, Arthur G. Wray, Hill, Morgan & Bledsoe, Vincent Morgan and Kenneth K. Wright for Appellants.

U. S. Webb, Attorney-General, Leon French, Deputy Attorney-General, and Kemp, Partridge & Kemp for Respondents.

STEPHENS, J.—This is an appeal from a judgment in *quo warranto*, declaring invalid an attempted annexation of certain territory in the City of Whittier, Los Angeles County.

There are three separate acts prescribing the procedure for the annexation of territory to an existing city. These acts are the same basically. The act of 1889 (Stats. 1889, p. 358) provides for annexation of inhabited territory upon petition of electors of an existing city. The act of 1899 (Stats. 1899, p. 37) provides for the annexation of uninhabited territory to an existing city. The act of 1913 (Stats. 1913, p. 587) provides for annexation of inhabited territory to an existing city upon petition of electors residing in territory proposed to be annexed. This latter act also provides in effect that two or more noncontiguous bodies of land cannot be annexed under a general election in the territory proposed to be added to the city. It was this latter act that was used in the instant proceeding. Throughout this opinion we shall designate the area proposed to be annexed as the "addition" and the City of Whittier as it existed territorially before this annexation proceeding as the "city".

The complaint in this action follows the opinion in the case of *People* v. *City of Lemoore,* 37 Cal. App. 79 [174 Pac. 93]. As may be seen by the drawing reproduced in the printed report, that case concerned an attempt to annex territory almost completely surrounding the original city of Lemoore. The opinion proceeds to divide the proposed annexation area into nine parcels. All of these parcels are contiguous to the old city. The boundaries of parcel 1 do not touch the boundary of any of the other parcels, but this parcel is connected with one of the other parcels by a 20-foot road 1600 feet long. The court found these two parcels to be noncontiguous and held the annexation void as the proceedings sought to effect the annexation through a general election within the proposed annexation area. Just what rule the court used in dividing the whole area into parcels is not divulged, but it is clear that ownership, a railroad right of way, county roads and subdivisions were considered in such division exactly as in the case now before us for decision. There is language in the opinion seeming to hold that notwithstanding each of these parcels was contiguous to the old city area, each of these parcels had to touch each of the other parcels else the whole annexation area could not be said to constitute a single body of land and thus be the subject of annexation through one general election in the area. But this opinion does not constitute any authority

whatever upon this point, for upon petition for hearing before the Supreme Court that court specifically withheld its assent to such a holding. (See Supreme Court opinion following Lemoore opinion, *supra.*)

The complaint in the instant case divides the area of the "addition" into seven parcels. As in the Lemoore case, ownership, subdivisions, roads and a railway right of way are considered in the division of the annexation area into parcels. But, unlike the Lemoore case, there is no area of the proposed addition lying away from the main area and connected only by a narrow strip of land. The legal description of the "addition" shows the property to be one single body of land lying southwesterly of the old city lines and contiguous thereto. ▮ However, counsel for the People urge in their briefs that these so-called parcels are or some of them constitute separate and distinct bodies of land, and claim, therefore, that the whole area could not be annexed under one general election. As authority, the Lemoore case and *People* v. *City of Monterey Park,* 40 Cal. App. 715 [181 Pac. 825], are cited. As we have already pointed out, we think the Lemoore case does not assist respondents. The holding in the Monterey Park case that two bodies of land, one without inhabitants and one with inhabitants but connected only by a street running through other lands, are noncontiguous, is certainly not inconsistent with the Supreme Court's limited approval of the Lemoore case.

Almost every annexation case reported in appellate decisions of this state shows the annexed area to. be traversed by streets, and in no case except the Lemoore case can there be found a word of support for the proposition that a street traversing a body of land divides the portion lying on one side from the portion lying on the other side so as to constitute separate bodies of land under the annexation acts. *People* v. *City of South Gate,* 118 Cal. App. 428 [5 Pac. (2d) 482], holds that a flood control right of way, a watercourse, a line of railway or a public highway does not so operate. In the arbitrary division of the annexation area of the instant case into separate parcels there are two parcels upon which there are no residents. Parcel 2, about the size of a city lot, is the site of Whittier city wells and pumping plants. Adjacent thereto on two other lots, parcel 3, families of three employees in the water plant live. Parcel 2 is uninhabited.

Parcel 6, being a very small piece of ground occupied entirely by the railroad right of way, is uninhabited. All other parcels are inhabited. In *People v. Town of Ontario,* 148 Cal. 625 [84 Pac. 205, 212], where there were vacant lots and areas it is said the annexation area "was territory, which taken as a whole may fairly be said to be inhabited territory." This is authority for holding, and we do so hold, that the whole proposed "addition" to the City of Whittier is in fact and in law one single inhabited body of land.

As all of the facts hereinabove related were alleged in the complaint and not denied or covered by a written stipulation, no additional evidence was required to establish the same. Respondents claim, however, that the lines of the "addition" were drawn so as to include property subject to uses inconsistent with urban development and introduced testimony to show the use to which the land within the "addition" is put and the use and development to which adjacent land outside of the area is put. They also show that one boundary line of considerable length includes a street but not the properties fronting on one side of such street, and in another instance drops below this street line into a subdivided tract including only a small portion thereof (referring herein to "parcels" 2 and 3). They also showed by evidence that a portion only of an orchard along a street line is included. Also that one short boundary line passes between two houses, both of which are served by the same driveway. Conceding (but reserving doubt) that the court was right in permitting the testimony to come in as an inquiry upon an issue of fraud or oppression, this evidence was wholly immaterial as to any other issue before the court. We base this ruling particularly on *People v. City of Los Angeles,* 154 Cal. 220, quoting from page 223 [97 Pac. 311, 312], "[W]e are satisfied that whether the territory in question, and of the shape, extent, and character fixed, should be annexed to the city of Los Angeles, was purely a political question, which, under the act, was left to the exclusive determination of the voters of the municipality and the territory sought to be annexed." (*People v. Loyalton,* 147 Cal. 774 [82 Pac. 620] ; *People v. City of Riverside,* 70 Cal. 461 [9 Pac. 662, 11 Pac. 759].)

Respondents contend that by reason of the use to which some of the land in the addition is put the annexa-

tion is oppressive upon some of the relators. Evidence upon this point was incompetent and immaterial, as the subject matter is legislative and not judicial. (*Allen* v. *Board of Trustees*, 157 Cal. 720 [109 Pac. 486].)

The complaint also alleged that there had been former attempts to annex a part of this territory with a greater area and that these attempts had either failed or had been abandoned because of opposition. It also alleges that the petition for the annexation election was drawn and instituted by a deputy city engineer of the City of Whittier, living in the proposed annexation area, and that the lines were drawn so as to include those favorable to the annexation project and exclude those unfavorable thereto. Also that those favorable to the project did not inform relators of the projected proceedings. We think all of this is immaterial to any issue before the court unless proper under a fraud inquiry as heretofore stated in regard to other evidence, and that all such testimony was immaterial and incompetent on any other issue.

There is an indefinite allegation of fraud in the complaint, and during the course of the trial it was stated by counsel for the People in effect that the fraud intended was constituted by the facts that would go to establish the allegations just referred to—that is, the drawing of the lines to indicate those favorable and exclude those unfavorable, and the noncommunication as to initiation of the proceedings. We think the authorities above cited are authority for holding that the facts pleaded as constituting fraud were merely political questions as to which the courts have nothing to do. Every court in the land knows that the lines of few cities and few annexation areas are drawn on any fixed plan of form or shape. It is probable that lines are drawn to include those favoring the project and to exclude those opposed, but we know of no inhibition thereof. There is but one circumstance in the case where the line seems to deviate from a boundary of a fairly symmetrical area. The one is parcels 2 and 3 combined to include the city pumping plant and workers. Fraud cannot be decreed upon this fact or upon all of the facts herein claimed to constitute fraud, and the trial court did not find fraud existent in the case.

The complaint alleges that the city council of Whittier ordered the election after the presentation of the peti-

tion, and determined certain facts stated in the petition without taking any evidence thereon. There are two conclusive answers to this allegation. The first one is that the determination of the referred to facts is left exclusively with the council without the right of appeal to any tribunal. It was said in *People* v. *City of Los Angeles,* 133 Cal. 338 [65 Pac. 749, 750], an action in *quo warranto* (Code Civ. Proc., sec. 803 et seq.), that "whenever any board, tribunal or person is by law vested with authority to decide a question, such decision, when made, is *res adjudicata,* and as conclusive of the issues involved in the decision as though the adjudication had been made by a court of general jurisdiction". In *People* v. *City of Ontario,* 148 Cal. 635 [84 Pac. 205, 210], another and leading annexation *quo warranto* case, the court said: "Whatever may be the rule applicable in *certiorari* (*Swanson* v. *City of Orange,* 97 Cal. App. 344 [275 Pac. 889] our citation), which is a direct attack upon the particular order alleged to have been in excess of jurisdiction, the decisions in this state compel us to hold that even an implied finding is conclusive in a *quo warranto* proceeding, or in any case where the order is collaterally attacked." And, again, in the same opinion: "Under the decisions the order of the board calling the election must here be taken as conclusive evidence that the petition presented, sufficient on its face, was in effect sufficiently signed by electors to confer requisite power, and that the finding of the board to that effect, be it express or implied, was sustained by satisfactory proof." (See *Wolfskill* v. *Los Angeles,* 178 Cal. 610 [174 Pac. 45], and *People* v. *San Diego,* 71 Cal. App. 422 [236 Pac. 377].) ■ The other answer is that this allegation is not sustained by the evidence. The ordinance calling the election (exhibit C) includes a number of inducement paragraphs or "whereases". The first one refers to the reception of the petition by the council; the second one states that the petition contains a description of the territory in words and figures which would show it to be in one single body and contiguous to the city; the next one states that the petition was signed by not less than one-fourth of the qualified electors residing in the territory described; and the next one, that the territory described does not form a part of any other municipal corporation and that it appears that the territory is in-

habited. We think it sufficiently appears from these paragraphs that the council "took evidence" upon the jurisdictional requirements. In the petition for annexation the council had evidence before it. This petition was signed by a number of persons whose statements the council was evidently willing to take. One of the inducement paragraphs states as a finding of fact that the registration of voters of the county (when compared with the petition) shows that one-fourth of the qualified electors residing in the territory described had signed the petition. Certainly we cannot assume that the council decreed these facts without any basis therefor. Rather the presumption is the other way, that officials in performing their duties performed them with all legal requirements. The petition also showed that the property was inhabited (as did the said register of voters) and that the territory constituted one body of land. For all we know (and this collateral attack cannot inquire) each councilman himself knew the territory well, or each and/or all of them went to view the property between the third of the month, the filing date, and the tenth of the month, the date of the ordinance.

■ It may also be added, if more were needed, that the proceeding known as *quo warranto* is to be exercised only to right an existing wrong and not to try moot questions. It therefore would seem necessary before any issue is presented in the case, as to findings of fact by the council, that there should be allegations that such facts were actually not true. (See interesting comment in *Imperial Water Co.* v. *Board of Supervisors,* 162 Cal. 14, at pages 24 and 25 [120 Pac. 780], where the same point is treated in *certiorari.*) Not only is this allegation not to be found in the complaint, except as to the territory constituting one or more bodies of land, but the stipulation of facts completely covers all of the facts necessary to be found by the council before it could act upon the petition.

■ The complaint alleges, and the stipulation of facts is to the same effect, that the petition was not dated; but the statute does not require that it be dated. Likewise, it is alleged and admitted that no dates were affixed after the names of any of the signers of the petition; but under the authority of *People* v. *City of Belmont,* 100 Cal. App. 537

[280 Pac. 540], we hold that this does not affect the validity of the petition.

■■■■ A remaining point concerns an alleged error in the description of the "addition". The stipulation referred to is that the petitioners intended to fix the boundary line between the most northerly line of parcel 7 on the ownership property line, but through some error it . was described to fall one foot beyond this line. All of the proceedings carry this error. We think it is too late after the annexation proceedings have all been had to go back and inquire into the motive or the intention of the petitioners, and that the lands described remain the lands within the proposed "addition". The logic of this statement would seem to support it, but the Supreme Court passed upon a question of somewhat the same character in the same way, in *People* v. *Town of Loyalton,* 147 Cal. 774 [82 Pac. 620]. The only materiality of the stipulation regarding this fact is that it absolves the petitioners from any ulterior motive in drawing the line one foot off the property line.

■■■■ Respondents raise a very interesting constitutional question. The annexation statute of 1913 requires that the election notice, including appropriate reference to any existing indebtedness of the city which is to be paid by the levy of taxes over the whole territory after annexation, shall be published, if published at all, "for four weeks preceding the hearing thereof". Section $8\frac{1}{2}$ of article XI of the Constitution generally covers the matter of consolidating territory into one organization known as a "city and county". In the various steps toward that end the consent of incorporated territory must be had by separate vote before it can be included in a district with other territory in which a vote is to be taken upon the acceptance or rejection of consolidation into a city and county. Thus two elections are provided for and both of these elections are proceedings relating to the consolidation of territory into or with a "city and county" government. In both of these elections notice, if published, is required to be published for five successive weeks, the last thereof to be not less than twenty days prior to the date of election. It would seem clear thus far that the notice of elections as here just referred to would have no application to a simple annexation to a city. However, further on in this subdivision of the Constitution we find the following

paragraph: "No property in any territory hereafter consolidated with or annexed to any city or city and county shall be taxed for . . . any indebtedness of such city or city and county outstanding at the date of such consolidation or annexation . . . unless there shall have been (successfully) submitted to the qualified electors . . . the proposition regarding the assumption of indebtedness *as hereinbefore set forth . . .* " The question presents itself as to whether, under this provision, the election procedure prescribing for steps in city and county formation or enlargement applies as well to an annexation proceeding to a city as in the instant case. It will be seen that this question could not have arisen had the expression which is above italicized by us, "as hereinbefore set forth", not been in the provision, for then any appropriate election would have answered the requirement. It is then most important to ascertain the antecedent, as it were, of this phrase. The immediate subject before this phrase treats of the submission to electors of "the proposition regarding the assumption of indebtedness". This, of course, needs explanation as to what indebtedness is meant, and the question is answered by referring back in the same paragraph to "any indebtedness outstanding at the date of . . . annexation". We conclude that the questioned phrase refers to the indebtedness intended as expressed in the paragraph with such phrase, and not to the procedure for city and county enlargement occurring in the Constitution several paragraphs earlier, and that the notice of election which was published in this instance was effective for all purposes. The question does not seem to be raised in *Fostler* v. *Los Angeles,* 179 Cal. 263 [176 Pac. 438], but the opinion and decision therein could not have been reached had the court followed the theory contended for by respondents herein.

Appellants respond to this question in another manner. The point is not raised in the complaint, but before decision in the superior court plaintiffs requested the privilege of amending, to add it. The court denied the application and appellants here assert that this ruling has become *res adjudicata,* since no appeal was taken thereon. Respondents answer that jurisdictional questions can be raised at any time, and appellants counter with the proposition that it comes too late as it amounts to a new cause of action and

section 349½ of the Code of Civil Procedure is a binding statute of limitation against questioning the legality of an annexation later than three months after completion of the proceedings. We do not think it is necessary to pass upon the point.

The judgment is reversed and the superior court is directed to make its findings of fact and conclusions of law in accord with this opinion, and to enter judgment for defendants and against plaintiffs, together with costs.

Craig, Acting P. J., and Archbald, J., *pro tem.*, concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 11, 1933.