BILL LOCKYER Attorney General DANIEL G. STONE Deputy Attorney General
HILDA R. PLASENCIA and RAMON R. DOMINGUEZ request leave to sue in quo warranto upon the following questions:
1. Is Tommy Monreal unlawfully holding the office of city council member of the City of Huron because he was not a city resident at the time of his election?
2. Is Jose Diaz unlawfully holding the office of city council member of the City of Huron because Tommy Monreal was not a city resident when he acted as a proponent of the recall election resulting in Mr. Diaz's election to office?
3. Is Francisco Chavez unlawfully holding the office of trustee of the Coalinga-Huron Unified School District because Tommy Monreal was not a school district resident when he acted as a proponent of the recall election resulting in Mr. Chavez's election to office?
 CONCLUSIONS
1. The question whether Tommy Monreal is unlawfully holding the office of city council member of the City of Huron does not present a substantial issue of fact or law requiring judicial resolution.
2. The question whether Jose Diaz is unlawfully holding the office of city council member of the City of Huron does not present a substantial issue of fact or law requiring judicial resolution.
3. The question whether Francisco Chavez is unlawfully holding the office of trustee of the Coalinga-Huron Unified School District does not present a substantial issue of fact or law requiring judicial resolution.
 ANALYSIS
At a recall election held on November 4, 2003, Tommy Monreal and Jose Diaz were elected to the Huron City Council, and Francisco Chavez was elected to the Coalinga Huron Unified School District Board of Trustees. Mr. Monreal was a proponent of the recall election. Hilda R. Plasencia and Ramon R. Dominguez ("Relators") allege that Mr. Monreal, Mr. Diaz, and Mr. Chavez are not lawfully holding their offices because Mr. Monreal was not a resident of the city or of the school district when he acted as a proponent of the recall election or thereafter. We conclude that Relators' application to file suit in quo warranto must be denied with respect to all three office holders.
The offices of city council member and school district trustee are "public offices" within the meaning of Code of Civil Procedure section803, which states in part:
"An action may be brought by the attorney-general, in the name of the people of this state, upon his own information, or upon a complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office . . . within this state."
A suit filed under this statutory provision is known as a "quo warranto" action and is the proper remedy to test title to the offices in question. (See 86 Ops.Cal.Atty.Gen. 194, 195 (2003) [school district board member]; 85 Ops.Cal.Atty.Gen. 90, 91 (2002) [city council member].)
In considering an application for leave to sue in quo warranto, our task is to determine (1) whether a substantial question of fact or law exists that requires judicial resolution, and (2) whether the public interest would be served by seeking such a judicial resolution. (28 Ops.Cal.Atty.Gen. 369, 373 (1956).) With respect to the particular issues presented here, we observed in 84 Ops.Cal.Atty.Gen. 154, 156 (2001):
". . . While no final judgment will be made by this office on the merits, a substantial showing must be made before we will authorize a judicial challenge to a person's right to hold public office. This is especially so when the issue is whether a public officer has moved his or her `residence' out of a public agency's boundaries, since such a change requires not only physical conduct but also intent."
1. Office of Mr. Monreal
Relators have presented declarations, photographs, maps, voting records, telephone book pages, and other documents indicating that Mr. Monreal resides at an apartment building in the City of Fresno, where his car is frequently parked in a lot nominally restricted to apartment residents. The apartment address is listed on Mr. Monreal' s vehicle registration. Two declarants state that Mr. Monreal personally mentioned to them that he "lives" in Fresno.
Mr. Monreal responds that, at all relevant times, his domicile has been in Huron, where he resides in a house with his sister and her family and his mother. He concedes that he divides his time between his Huron residence and his girlfriend's apartment in Fresno, where he lived as a college student between 1996 and 1998 and where the telephone is still listed in his name. However, he asserts that he does not consider the apartment to be his home, that his girlfriend's name is the only name on the apartment rental agreement, and that she is currently the sole tenant there. He further states that he has consistently received his mail at a Huron post office box,[1] and that he has maintained his voter registration, and voted, in Huron at all relevant times. These statements are supported by declarations from, among others, his brother-in-law, various neighbors, his girlfriend, and the manager of the Fresno apartment complex, and are further supported by documents obtained from the Fresno County Registrar of Voters. Mr. Monreal's driver's license and proof-of-insurance form list his address as the Huron post office box.
A person is not eligible to hold office as a member of a city council unless he or she maintains a "legal residence" or "domicile" within the city. (72 Ops.Cal.Atty.Gen. 8, 10-12 (1989); see Elec. Code, § 349; Gov. Code, §§ 244, 1770, subd. (e), 34882; Fenton v. Board of Directors (1984) 156 Cal.App.3d 1107, 1113, 1116.)
Relators claim that Mr. Monreal is a resident of Fresno and thus is ineligible to hold office as a Huron City Council member. Much evidence has been presented regarding where Mr. Monreal resides. On several points the evidence appears to be in conflict, but Mr. Monreal does not dispute what appears to be the key fact: he divides his time between two residences. One is the home of his sister and her family and his mother in Huron, and the other is a Fresno apartment rented and occupied by his girlfriend.[2]
The circumstances of a public officer residing in two or more places have been examined in numerous contexts. (See, e.g., Fenton v. Board ofDirectors, supra, 156 Cal.App.3d 1107 [community services district director lived almost exclusively outside district, but regularly visited her property in district and considered it her home]; 86 Ops.Cal.Atty.Gen., supra, at p. 197 [school district board member maintained apartment in district but resided primarily outside district]; 84 Ops.Cal.Atty.Gen., supra, at p. 157 [community college district director divided time between house in district and apartment outside district]; 83 Ops.Cal.Atty.Gen. 181, 182-183 (2000) [school district trustee divided time between mobile home in district and house outside district]; 82 Ops.Cal.Atty.Gen. 78, 80-81 (1999) [water district director purchased home outside district but also maintained residence within district]; 81 Ops.Cal.Atty.Gen. 98, 101-103 (1998) [school district board member divided time between daughter's condominium in district and several homes outside district]; 79 Ops.Cal.Atty.Gen. 21, 25-27 (1996) [mayor purchased second home but continued to reside in city]; 75 Ops.Cal.Atty.Gen. 287, 288-289 (1992) [county supervisor divided time between house in district and house outside district]; 75 Ops.Cal.Atty.Gen. 26, 28 (1992) [community college trustee divided time between new home outside district and rented residence in district]; 73 Ops.Cal.Atty.Gen. 427, 429-431 (1990) [hospital district director maintained second residence outside district]; 72 Ops.Cal.Atty.Gen.,supra, at pp. 11.. 15 [mayor purchased home 38 miles from city, but spent some nights at brother-in-law's mobile home in city].)
These authorities make clear that a public officer may have one or more residences outside the jurisdiction in question. It is the officer'sdomicile that matters, and a person may have only one domicile at any given time. A determination of domicile rests on a combination of the officer's conduct and intent. In 72 Ops.Cal.Atty.Gen. 8, supra, we observed:
"While the question of domicile is a mixed question of law and fact [citation], many factors enter into the equation, including where an individual is registered to vote and his or her address for mail [citation], where tax returns are filed [citation], where an automobile is registered [citation], and where a homeowner's exemption or renter's credit is taken [citation]. However, the critical element is that of intent. While declarations of intent are significant, they are not determinative. The acts must be examined as well. [Citation.]" (Id. at p. 14.)
In our view, the most that can be said of Relators' declarations and documentary evidence is that they establish a residence in Fresno with respect to Mr. Monreal. However, it is clear that such residence, even if it were a house owned by him and occupied by his family, does not establish domicile — especially where, as here, Mr. Monreal affirms his intent to maintain his domicile in Huron and supports his declaration of intent with substantial evidence from other sources. (84 Ops.Cal.Atty.Gen., supra, at p. 157; 73 Ops.Cal.Atty.Gen., supra, at p. 430; 72 Ops.Cal.Atty.Gen, supra, at pp. 14-15.) His supporting evidence establishes that: (1) Mr. Monreal's driver's license and proof-of insurance list Huron as his address; (2) he is registered to vote in Huron, has voted there since at least 2000, and has never registered or voted elsewhere; (3) both his brother-in-law and his neighbors confirm that he has resided at the Huron address since at least 2000; (4) he receives mail in Huron; and (5) both the apartment manager and the listed tenant confirm that he is not a tenant, and does not pay rent or utilities, at the Fresno apartment.
Accordingly, with respect to Mr. Monreal's domicile for purposes of being a member of the Huron City Council, we conclude that a substantial issue of fact or law has not been presented by this application. (84 Ops.Cal.Atty.Gen., supra, at p. 157; 73 Ops.Cal.Atty.Gen., supra, at p. 431; 72 Ops.Cal.Atty.Gen., supra, at p. 15.)
2. Offices of Mr. Diaz and Mr. Chavez
With respect to the public offices held by Mr. Diaz and Mr. Chavez, Relators' claims are also premised upon the Fresno residency of Mr. Monreal. Was Mr. Monreal a resident of Huron at the time when he was a proponent of the recall election that resulted in the election of Mr. Diaz and Mr. Chavez?
Elections Code section 11005 states: "The proponents of a recall must be registered voters of the electoral jurisdiction of the officer they seek to recall."[3] This requirement serves primarily to protect a public entity from having to bear the expense of conducting a recall election in the absence of serious interest on the part of the local electorate. Once the election has been conducted and the results have been certified, allegations that this requirement was violated are essentially rendered moot — particularly when, as here, local interest was clearly confirmed by local voters, a majority of whom ultimately recalled several incumbent office holders and elected successors who have now assumed office. (See Lenahan v. City of Los Angeles (1939)14 Cal.2d 128, 132-134; Long v. Hultberg (1972) 27 Cal.App.3d 606,608-609.)
As described by the Supreme Court, the controversy which Relators attempt to raise with respect to these proposed defendants "has, by reason of the subsequent election, faded into insubstantiality." (Lenahan v. City of Los Angeles, supra, 14 Cal.2d at p. 134; see also People v. City of Whittier (1933)133 Cal.App. 316, 324 [quo warranto proceeding "is to be exercised only to right an existing wrong and not to try moot questions"].)[4]
In any event, we have already concluded that the question of Mr. Monreal's domicile does not present a substantial issue of fact or law requiring judicial resolution. Such determination is sufficient to reject Relators' proposed complaint against Mr. Diaz and Mr. Chavez.
Relators' application for leave to file an action in quo warranto is thus DENIED in its entirety.
[1] The United States Postal Service does not provide direct mail delivery to residences within the city.
[2] Relators have submitted several declarations in which the declarants state simply that they are residents of Huron and that "Mr. Monreal did not reside" at the Huron home he has identified as his legal residence during a period of time ranging from ten months to more than ten years. However, none of these declarations contains foundational information to support such conclusory statements.
[3] Only a person whose domicile is in an electoral jurisdiction is entitled to register to vote in such electoral jurisdiction. (Elec. Code, §§ 2000, 2020-203 5.) Mr. Monreal concedes that he was a "proponent" of the subject recall election, as that term is defined in Election Code section 343: ""Proponent or proponents of a recall petition' means the person or persons who have charge or control of the circulation of, or obtaining signatures, to such petitions."
[4] Relators may contest the fairness of the recall election itself without the necessity of filing a quo warranto action. (See Code Civ. Proc., § 44; Elec. Code, §§ 16 100-16940; Friendsof Sierra Madre v. City of Sierra Madre (2001) 25 Cal.4th 165, 192-194;Bradley v. Perrodin (2003) 106 Cal.App.4th 1153, 1173; Long v. Hultberg,supra, 27 Cal.App.3d at p. 608.)