THE STATE OF KANSAS, *on the relation of C. N. Sears, as County Attorney of Cheyenne County,* v. J. C. BURTON, *as County Clerk, etc., et al.*

1. CASE, *Followed.* The rule stated in *The State ex rel. v. Stock,* 38 Kas. 154, as to private judgments having no binding force where the state is attempting to enforce its laws, followed.

2. PLEA, *Bad.* The plea of a subsequent county-seat election *held* bad, upon the same authority.

3. ———— *Valid Statute.* The act entitled "An act to legalize a certain election in Cheyenne county, and to declare the town of St. Francis the permanent county seat of said county," approved February 5, 1891, is constitutional and valid.

*Original Proceeding in Mandamus.*

THE case is stated in the opinion, filed July 9, 1891.

*C. N. Sears,* county attorney, for The State; *Edwin A. Austin,* and *S. W. McElroy,* of counsel.

*Webb & Lindsay,* for defendants.

Opinion by GREEN, C.: This is an original proceeding in *mandamus,* brought by the county attorney, to compel the county officers named, of Cheyenne county, to remove their respective offices from St. Francis to Bird City, and to compel them to hold their offices at Bird City, as the permanent county seat of Cheyenne county. The alternative writ was allowed on the 2d day of February, 1891, and served on the

defendants on the 7th. The cause was submitted upon the facts stated in the alternative writ and answer. The facts material to the issue, as claimed by the plaintiff, are substantially as follows:

Cheyenne county was organized April 1, 1886, and Bird City was designated as the temporary county seat. An election was held on the 15th day of May, 1886, and Bird City received a majority of the votes cast for the permanent county seat. The county officers held their respective offices at Bird City until about the 1st day of March, 1889, when they removed their offices to St. Francis. The answer of the respondents was a justification of such removal and continuance of the county seat at St. Francis, upon three grounds: First, that the election on the 15th day of May, 1886, had been adjudged to be null and void; second, that there had been a subsequent election held in the county, on the 26th day of February, 1889, at which St. Francis received a majority of all the votes cast for the permanent county seat; and, third, that by an act of the legislature, approved February 5, 1891, St. Francis was declared to be the permanent county seat.

I. The plea of *res adjudicata* is stated in the answer to the alternative writ, as follows:

"That the election in Cheyenne county on the 15th day of May, 1886, so far as the location of the county seat was and is concerned, was duly and finally determined and adjudged against the relator, the state of Kansas, and all persons whomsoever, by the consideration and decree of the district court of Cheyenne county, in a certain proceeding duly commenced, pending and had in said court, wherein the state of Kansas, on the relation of Thomas J. McCarty and R. M. Jacques, citizens, electors and tax-payers of the town of Wano, were plaintiffs, and Edwin M. Phillips, clerk of district court of Cheyenne county, was defendant, in the nature of *mandamus* to compel said Edwin M. Phillips, as such clerk, to remove his office from the town of Bird City, where he was unlawfully keeping his office, and to keep the same at the town of Wano, now St. Francis, which said last-named place the relators alleged to be the county seat of said county, and in which the said relators sought to, and did, contest the

pretended election held May 15, 1886, and the result thereof as declared by the board of county commissioners of said county, upon which election and result relator herein relies in this action and proceeding. It was duly and finally adjudged by said court, that said pretended election was null and void, and that no town was and had been chosen as permanent county seat of said county at said election."

The plea cannot be sustained in this case, which is brought upon the relation of the county attorney. The state is not bound by a suit prosecuted by a private party, in an action of this kind. (*The State ex rel. v. Stock*, 38 Kas. 154.)

II. The second plea of justification may be briefly stated :

"That afterward, on January 19, 1889, upon a petition of a sufficient number of the electors of said county whose names appeared on the last assessment rolls of the township assessors of the county, filed with the county clerk of said county, the board of county commissioners, acting on said petition, called an election to be held February 26, 1889, for the purpose of permanently locating the county seat of said county; that notice of said election was duly published by the county clerk on January 24, 1889, and weekly thereafter, in a newspaper published and of general circulation in said county; that notice of said election was also duly published by the sheriff of said county on January 31, and weekly thereafter until said election, in a newspaper published and of general circulation in the county; that afterward, on January 28, 1889, the board of county commissioners duly appointed certain persons to fill vacancies existing in the board of registrars for the several voting precincts in said county; that registration of the voters in the manner provided by law, by the persons authorized by law to act as judges of election in the several election precincts in said county, was had, and, in pursuance of said proceedings of said board of county commissioners and said notice of said election, an election was held in said Cheyenne county, on February 26, 1889, for the purpose of permanently locating the county seat of said county; and at said election, and by the result thereof as canvassed, the city of St. Francis received a majority of all the legal votes cast at said election, as was duly declared by the board of county commissioners sitting as a board of canvassers of the election returns of said election in said county."

We think this plea is bad. Taken in connection with the

first, it appears that the state was not bound by the judgment of the court which declared the first election void; hence, it is not clear that there was any authority for calling the second election. The judgment and decree of the district court of Cheyenne county, upon the relation of two citizens, against the clerk of the district court, was not sufficient ground for ordering another election. The first election must be set aside by some competent authority by which the state is bound, before another election could be ordered; and the subsequent election, having been held within five years, was unauthorized.

"No election for the relocation of such county seat shall be ordered or had within five years from the time of the holding of the last preceding election, touching the location or relocation of such county seat." (Gen. Stat. of 1889, ¶1897.)

III. The following act of the legislature is set up as the third plea of justification:

"AN ACT to legalize a certain election in Cheyenne county, and to de-clare the town of St. Francis the permanent county seat of said county.

"WHEREAS, On the 26th of February, 1889, there was held in the county of Cheyenne an election for permanently locating the county seat of said county, at which election the town of St. Francis received a majority of 292 votes; and

"WHEREAS, The county of Cheyenne now owns in said town of St. Francis a block of land of the value of $4,000, and county buildings thereon of the value of $3,000; and

"WHEREAS, It is claimed by rival town-site companies that said election was illegal, and there is likely to arise in said county a contest over the permanent county seat thereof, to the great detriment of the people and tax-payers of said county: now, therefore,

"*Be it enacted by the Legislature of the State of Kansas:*

"SECTION 1. That the said election for the purpose of per-manently locating the county seat of Cheyenne county, held February 26, 1889, be and the same is hereby legalized, and the town of St. Francis is hereby declared to be the perma-nent county seat of said county.

"SEC. 2 This act shall take effect and be in force from and after its publication in the official state paper.

"Approved February 5, 1891.

"Published in official state paper February 6, 1891."

It is contended by the relator, that this act is void and unconstitutional, because it is in contravention of § 1, art. 9, of the constitution, which says:

"But no county seat shall be changed without the consent of a majority of the electors of the county."

It is argued with a great deal of force that the consent required by the constitution must be affirmatively given; that the election held on the 26th day of February, 1889, was a nullity; and, therefore, the legislature had no power to legalize such a nullity. Let us examine this proposition. The constitutional restriction placed upon the legislature is, that it cannot change the location of a county seat without the consent of a majority of the electors of the county. It is true the legislature has said that, when a county seat has been located, no other election shall be had within five years of the time of the holding of the last election. Yet it could dispense with this rule and provide for the holding of an election at any time. It is a matter peculiarly within the power of the legislature to say when and how county-seat elections shall be held. If it be within the power of the legislature to prescribe the rule for such elections, can it not by subsequent legislation legalize an election which was lacking in one of the requisites which it might have dispensed with by a previous act? The law has been stated by Judge Cooley:

"If the thing wanting or which failed to be done and which constitutes the defect in the proceedings, is something the necessity for which the legislature might have dispensed with by prior statute, then it is not beyond the power of the legislature to dispense with it by subsequent statute, and if the irregularity consists in doing some act, or in the mode or manner of doing some act, which the legislature might have made immaterial by prior law, it is equally competent to make the same immaterial by a subsequent law." (Cooley, Const. Lim. [6th ed.] 457.)

This court has said that, where an irregularity rendering an act of a city or subordinate agency illegal or void is simply a failure to comply with some provision of the statute which

the legislature might in advance have dispensed with, the legislature can, by a general curative statute, subsequently passed, dispense with such compliance, and thereby render the act of the city or subordinate agency legal and valid. (*Mason v. Spencer*, 35 Kas. 512.)

Again, this court has said, in speaking of county-seat elections, that a vote of a majority is not necessary, nor even the formality of an election. The consent of a majority of the electors, in whatever form expressed, whether in election or by petition, or otherwise, is sufficient. (*County Seat of Linn Co.*, 15 Kas. 530.) Now, the fact exists that an election was held in Cheyenne county on the 26th day of February, 1889. It may not have been authorized, but it is admitted by the pleadings that an expression was given upon the question of the location of the county seat in that county. Was not this sufficient for the legislature to consider as a consent, within the spirit of § 1 of article 9 of the constitution? We need not call it an election, for that is not necessary; the consent may be expressed by petition, or in any other form. We do not know what was before the legislature, and can only resort to the preamble and the act itself to determine the object of the legislature. With this existing fact before us, of an expression having been given by the people of Cheyenne county upon the question of the location of the county seat, we cannot say that the legislature acted upon an absolute nullity. There was something expressed, which it regarded as a consent; and upon that consent based its action, by passing the law in question. The proposition may be summarized: An election was held on the 15th day of May, 1886, locating the county seat at Bird City. The people of the county subsequently expressed themselves in favor of St. Francis as the county seat, but in a manner not authorized by law at the time; but the defect in such expression was a matter which the legislature might have dispensed with in the first instance. The defect, therefore, was such an one as the legislature could and did cure by a subsequent enactment, which we are constrained to uphold.

4 ·— 47 KAS.

We therefore recommend that the peremptory writ of *mandamus* be denied.

By the Court: It is so ordered.

All the Justices concurring.