[Civ. No. 788.   Third Appellate District.—December 19, 1910.]

## THE PEOPLE ex rel. GEORGE B. LEAVITT, Respondent, v. S. S. BASS, Appellant.

ELECTION CONTEST—TIE VOTE—SPECIAL ELECTION—CERTIFICATE TO APPELLANT—REVERSAL OF JUDGMENT—FINAL JUDGMENT FOR RELATOR—ESTOPPEL NOT PLEADED—QUO WARRANTO.—Where the first judgment in an election contest resulted in a tie vote, and the supervisors immediately ordered a special election, which resulted in the election of the appellant herein, and the relator herein appealed from the judgment, which was reversed, and on a second trial final judgment was rendered in favor of the relator, and on such second trial no estoppel was pleaded by reason of the relator having taken part in such election, and the appellant, having received a certificate of election, refused to yield possession of the office, whereupon the people, upon relation of the prevailing party, brought an action of *quo warranto* to oust the appellant, he will not be permitted in such action collaterally to impeach the final judgment by asserting such estoppel against the state.

ID.—PEOPLE NOT BOUND BY ACTS AND CONDUCT OF RELATOR IN CONSENTING TO SPECIAL ELECTION.—The people are not bound by the acts

or conduct of the relator in another proceeding between different parties. The action of *quo warranto* is in no legal sense under the control of the relator, and the people could not be estopped therein by the action of the relator in consenting to a special election under a former judgment erroneously establishing a tie vote, or from inquiring into the validity of the certificate of special election given thereunder.

ID.—PENDENCY OF CONTEST—RIGHT TO OFFICE PENDING APPEAL FROM FINAL JUDGMENT.—Where the superior court, in an election contest, has finally declared a person entitled to the highest number of votes, the person declared elected is entitled under section 1123 of the Code of Civil Procedure to receive a certificate of election; and under section 1126 of the same code, "during the pendency of proceedings on appeal and until the final determination of such proceedings, the person so declared elected shall be entitled to the office in like manner as if no appeal had been taken."

ID.—SUPERVISORS PENDING CONTEST WITHOUT POWER TO CALL ELECTION. Section 1124 of the Code of Civil Procedure provides for a contest when the body canvassing the returns declared that no person has received the highest number of votes for the office contested; and during the pendency of the final determination of such contest, the board of supervisors were without authority to call a special election under an erroneous judgment sustaining a tie vote, which was subject to reversal upon appeal and was so reversed.

APPEAL from a judgment of the Superior Court of Lassen County. H. D. Burroughs, Judge.

The facts are stated in the opinion of the court.

W. M. Boardman, and Louis P. Boardman, for Appellant.

U. S. Webb, Attorney General, and Pardee & Pardee, for Respondent.

CHIPMAN, P. J.—*Quo warranto.* In the action plaintiff had judgment, from which defendant appeals on bill of exceptions.

Relator, Leavitt, and defendant, Bass, were candidates for the office of supervisor in the county of Lassen at the general election in 1908, Bass being the incumbent and seeking re-election. The result of that election, as declared by the board of supervisors, was a tie vote. Bass, thereupon, on November 14, 1908, filed a contest of the election in the superior court, and on November 25th, Leavitt did the same, as pro-

vided by section 1124 of the Code of Civil Procedure, enacted in 1907. At the hearing of these contests the court, on January 2, 1909, found the votes for the respective candidates to be a tie. On January 7, 1909, the board of supervisors, pursuant to section 1067 of the Political Code, ordered that a special election be held, and appointed January 19, 1909, as the day for such election. At the meeting of the board both Bass and Leavitt were present and assented to the holding of said election, and both became and were candidates at said election. Upon a canvass of the votes by the board of supervisors Bass was found to have received the highest number, and a majority of thirteen of all votes cast at said election for said office. Thereupon, to wit, upon January 25, 1909, and pursuant to the order of said board, the county clerk issued a certificate of election to Bass, "who does now and ever since the date of its issuance has held such certificate for said office; that on the same day he duly qualified as such supervisor, . . . and thereupon entered into said office and upon the discharge of the duties thereof, and has so continued to occupy said office and discharge the duties thereof." On January 29, 1909, shortly after the holding of said election and after the returns showed that he had been defeated, Leavitt served and filed his notice of appeal and perfected an appeal to this court, from the judgment of the superior court made on January 2, 1909, in the contest. This appeal was determined by this court on October 26, 1909, and the judgment reversed. (*Bass* v. *Leavitt,* 11 Cal. App. 582, [105 Pac. 771].) Upon the going down of the *remittitur* and on January 26, 1910, a new trial was held by the superior court of the original contests and upon the issues as originally framed, and on February 8, 1910, the court filed its decision to the effect that Leavitt had received eighty-eight votes and Bass eighty-five votes, at the general election for the office of supervisor of the district, and on the same day judgment was accordingly duly entered and the county clerk was directed to issue to Leavitt a certificate of election, and thereupon the county clerk issued a certificate of election to Leavitt. Demand was made upon Bass by Leavitt to be let into the office for which he had such certificate but was refused. Thereupon, on April 9, 1910, this proceeding was commenced at the instance of the attorney general, upon the

basis of said certificate, claiming that Bass had usurped, intruded into and was unlawfully holding and exercising the office, and had done so since the date of the issuance of the certificate to Leavitt. Bass filed an answer in the proceeding in which he set forth the facts relating to the special election and Leavitt's participation therein, as above stated, claiming that by his said acts and conduct Leavitt had abandoned his contest then pending in the superior court and was estopped from resorting to this or any other proceeding to gain possession of said office.

The trial court adjudged that "under and by virtue of the judgment given and made . . . on the eighth day of February, 1910 (in the contest action therein pending to which S. S. Bass, the defendant herein, and G. B. Leavitt, the relator herein, were parties), the said relator is, and ever since the date of said judgment has been, entitled to the office of supervisor, . . . and that the defendant S. S. Bass be required to forthwith vacate said office and cease to perform any of the duties thereof."

At the trial defendant Bass offered to prove the averments of his answer, on which he relied to show an abandonment of the contest suit by Leavitt, and that he was estopped thereby from availing himself of this proceeding. The court refused to admit the evidence, and this ruling presents the question now before us.

At the second trial of the contest the facts, now relied upon by Bass as an abandonment of the contest and an estoppel, were not pleaded by him. He submitted to and took part in the trial of the single issue there presented—namely, which of the two candidates had received the most votes at the general election, and from the judgment of the trial court he appealed to this court, which said judgment has this day been affirmed.

Respondent now urges that "if pending the trial of the Bass-Leavitt contest, Leavitt did, consented to, or failed to do anything whereby he became estopped from saying that he was legally elected at the general election in 1908, then such act, consent, or failure should have been set forth in the contest case, where it would have prevented him from obtaining a judgment in his favor. To raise the question of

15 Cal. App.—5

estoppel here for the first time is to make a collateral attack upon the judgment in the contest case, which is certainly not permissible.''

Doubtless it was competent for either party to have abandoned the contest so long as the action was one exclusively of personal concern and to which they alone were parties. The contest could have been dismissed by them after the trial court had found a tie vote, and the parties could have relied wholly on the result of the special election. But neither of them took any steps to disturb the jurisdiction of the court in the contest or to deprive either of the right to appeal from its then pending judgment. So far as we can now know, each of them may have relied upon his right to appeal the case should the special election be adverse to him. The court below retained its jurisdiction until the appeal was perfected and it regained it when the *remittitur* went down from this court. If, when the contest came on to be heard the second time, and meanwhile either of the parties had abandoned the contest or done some act or acts by which he was estopped from being heard, it would seem reasonable that he should have interposed his objections at that contest. The complaining party, however, made no objection to the hearing of the contest at the stage when the action was one of a personal nature, but reserved his attack and now makes it in an action where the people of the state have become interested as parties.

We think there is much force in the point made by respondent. Without deciding it, however, we think the judgment should be affirmed upon the other ground relied on by respondent which he states as follows: ''But further than this the matter pleaded does not amount to an estoppel. This proceeding is instituted by the attorney general in behalf of and in the name of the people of the state. Leavitt is merely the relator—the informant. The people are not bound by the acts or omissions of the relator in another proceeding wherein the people were not parties.''

In the case of the *People* v. *Lowden* (Cal.), 8 Pac. 66, the ''action was in the nature of *quo warranto,* brought by the attorney general, on the information of one Fordyce Bates, to obtain a judgment that the defendants were usurping, intruding into, and unlawfully holding a certain franchise

to collect tolls under a pretended wagon road corporation.''
The defendants demurred to the complaint on the ground that
Fordyce Bates was one of the original organizers and owners
of the wagon-road company, and was estopped from making
the complaint and from denying the legitimate existence of
the corporation he helped to make. The same facts were set
up in the answer by way of estoppel. Said the court: ''The
action is commenced in the interest of the public to redress
wrongs which injuriously affect the public. If the defend-
ants have usurped and are unlawfully exercising a franchise,
why should an action commenced to redress the wrong be
barred because of any prior acts or misrepresentation of the
informant? No case of a similar character has been called
to our attention where the doctrine of estoppel has been in-
voked, and we fail to see how it can be invoked here.''

In the case of the *People ex rel. Budd* v. *Holden,* 28 Cal.
124, Budd was a candidate for the same office to which de-
fendant had been declared elected. No contest was insti-
tuted, but the attorney general, on the information of Budd,
brought the action on behalf of the people of the state. It
was held that the right of an elector to contest the election
of any person who has been declared elected does not deprive
the people of the state, in their sovereign capacity, of the
right to inquire into the authority by which such person
assumes to exercise the function of a public office. The coun-
sel for the parties had made certain stipulations by which it
was agreed that the case should be tried upon evidence al-
ready taken before the referee and only such further evidence
as was expressly agreed to in the stipulation. The court
said: ''Theoretically, the people alone are interested in the
determination of the controversy involved in this case, and
no court would be justified in enforcing, as against them, a
stipulation made by the relator or his counsel to their preju-
dice. The action is in no legal sense under the control of
the relator. It was brought in the name of the people to
enforce their will as expressed at the ballot-box, and not
merely to redress the wrongs or enforce the rights of the
relator.'' That was a case where the relator in the action
undertook to bind the people. In the case here the acts of
the relator were entirely apart from and independent of the
proceeding in *quo warranto.* (See, also, *People* v. *Sutter*

*Street Ry.,* 117 Cal. 604, 612, [49 Pac. 736, 738].) The court said: "It [the city] has no power to initiate an action to secure a forfeiture. That power is vested in the attorney general. As it cannot enforce a forfeiture, it cannot waive it. The city cannot be estopped in respect to a matter over which it has no power."

In *People* v. *Rodgers,* 118 Cal. 393, [46 Pac. 740, 50 Pac. 668], the defendant had been, in another action—*Drew* v. *Rodgers* (Cal.), 34 Pac. 1081—adjudged ineligible by reason of his nonalienage. Subsequently he was elected to the office and duly qualified. Still later the attorney general brought the action for the purpose of ousting the defendant from the office and declaring the relator, Drew, entitled thereto. The relator was not the same who brought the first action. The judgment-roll in the former action was admitted in evidence to prove that defendant, Rodgers, was estopped from proving citizenship. The court held that this was error. Said the court: "The judgment [in the first case] was not between the parties to the present action, nor was it between the relator and the defendant. If the judgment in that action had been in favor of the defendant, the people would not have been precluded in the present action from showing that he was not in fact a citizen at the date of his election, and there would be, therefore, no mutuality in the estoppel of the judgment. It would open the door to collusion to hold that any elector, by contesting the validity of an election, could bind the people by suffering a judgment in favor of its validity." The fact that the case reported in 34th Pacific was brought by an elector other than the relator in the last case against Rodgers does not seem to affect the principle decided. *People* v. *Rodgers* was a different case and the parties plaintiff were different from the case of *Drew* v. *Rodgers.* So, here, the action is by the people who are entirely different parties from those who were parties to the contest, and who cannot be estopped by the conduct or acts of Leavitt, either in the original contest or subsequent thereto. He could not, by consenting to the special election, estop the people from disputing the declared result or from inquiring into the validity of the certificate given to Bass.

Section 1123 of the Code of Civil Procedure provides that where it appears that another person than the one returned

has the highest number of legal votes, the court must declare such person elected, and the person declared elected by the superior court shall be entitled to a certificate of election. Section 1124, Code of Civil Procedure, provides for a contest when the body canvassing the returns "declares that no person has received the highest number of votes given for a particular office." Section 1126, Code of Civil Procedure, provides that either party aggrieved may appeal to the district court of appeal, and that "during the pendency of proceedings on appeal, and until final determination of such proceedings, the person declared elected by the superior court shall be entitled to the office in like manner as if no appeal had been taken." The situation contemplated by the statute arose here; the contest was instituted and was pending which resulted in a decision that one of the contestants had received the highest number of votes. The board of supervisors were without authority to call the special election pending the determination of the rights of the contestants by the court.

The judgment is affirmed.

Burnett, J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 17, 1911.