[Civ. No. 4789.   Second Appellate District, ˙Division One.—February 25, 1925.]

In the Matter of the PEOPLE OF THE STATE OF CALIFORNIA on the Relation of WILLIAM EDWARD RYAN, Appellant, v. THE CITY OF SAN DIEGO (a Municipal Corporation), Respondent.

[1] JUDGMENTS—MUNICIPAL AFFAIRS—STATE—RES JUDICATA.—When a judgment against an officer or agency of the state is pleaded as a bar in a proceeding instituted by the state, the state is not bound by said judgment when the same involves a purely state matter, but when the judgment relates to a matter of municipal concern, and to a matter jurisdiction over which the state has committed to the administration of a municipality or officer, then such municipality or officer represents the state in said action and said judgment is binding and conclusive upon the state.

[2] MUNICIPAL CORPORATIONS — CONSOLIDATION MATTER OF LOCAL CONCERN.—The question of consolidating two cities (which are adjacent) under the provisions of the Municipal Consolidation Act of 1913 (Stats. 1913, p. 577) is one of local concern rather than one of state interest.

[3] ID.—OBSERVANCE OF LAW—INTEREST OF STATE—PARTIES.—While the state in its governmental capacity has a general interest in seeing that a proper observance is accorded to all of its laws by the people of the state, and particularly by its officers and such agencies as it has constituted for the better administration of such laws, still this general interest does not˙ constitute the state a party in interest in every proceeding instituted for the purpose of enforcing said laws or of determining whether they are in all instances complied with.

[4] ID. — MUNICIPAL CONSOLIDATION ACT OF 1913 — MUNICIPALITY AGENT OF STATE — STATUTORY CONSTRUCTION. — By the Municipal Consolidation Act of 1913 (Stats. 1913, p. 577) a complete plan or scheme has been provided by the legislature of the state for the consolidation of municipal corporation, in which the legislative bodies of the cities sought to be consolidated are clothed with all the authority necessary to carry into effect said plan or scheme; and in the exercise of this authority, the legislative body of the city in which consolidation proceedings have their inception is the agent of the state and represents the state in every stage of the proceedings, from the time the original petition is filed with it until the final record of the canvass is made in its minutes.

[5] ID.—JUDGMENT RELATING TO CONSOLIDATION OF MUNICIPALITIES— STATE BOUND THEREBY.—As the matter of consolidation of two

---

1. See 15 R. C. L. 1029; 15 Cal. Jur. 200.

contiguous municipalities under the Municipal Corporation Act of 1913 is of municipal interest primarily, and not of general state concern, and as the state has clothed the board of trustees of the city in which the consolidation proceedings are instituted with authority to represent it in all consolidation proceedings, the state is bound by the acts of its agent in such proceedings, and by any judgment of a court of competent jurisdiction rendered against said board of trustees directing it to perform the duties enjoined upon it by the statute providing for said proceedings.

[6] ID.—MANDAMUS TO COMPEL BOARD OF TRUSTEES TO CALL ELECTION —JURISDICTION—JUDGMENTS—RES JUDICATA.—The superior court, having jurisdiction to hear and determine a *mandamus* proceeding directed against the board of trustees of a city requiring them to call an election on the ground that a valid petition had been filed with said board for the consolidation of two municipalities (which petition for consolidation the board of trustees had determined to be insufficient for want of the required number of qualified signers), its judgment therein compelling the board of trustees to call such election, even if erroneous, when not appealed from, is binding and conclusive upon the parties thereto, in the same respect as it would have been had said judgment been free from error.

[7] ID.—CONSOLIDATION—PRELIMINARY STEPS—MANDAMUS — JURISDICTION.—The authority with which a court is vested to compel the calling of an election by the board of trustees of a municipality for the purpose of voting on a proposition of consolidating such municipality with another municipality necessarily implies that the court has authority to determine whether all the necessary preliminary steps have been taken which would make it obligatory upon the board to issue the call for the election.

[8] ID. — SUFFICIENCY OF PETITION FOR CONSOLIDATION — DETERMINATION BY BOARD OF TRUSTEES—FRAUD.—The determination by the board of trustees as to the sufficiency of the petition for consolidation was final and conclusive and the court could not go beyond or behind the action of the board, except in the case of fraud.

[9] ID.—JURISDICTION — RIGHTFULNESS OF DECISION. — A court having acquired jurisdiction to hear and determine the cause, it has authority to decide the cause incorrectly as well as correctly, since jurisdiction is the power to hear and determine, and does not depend upon the rightfulness of the decision made.

(1) 34 C. J., p. 1028, n. 46, 46 New, 47, p. 1040, n. 60, 60 New. (2) 28 Cyc., p. 198, n. 20.   (3) 36 Cyc., p. 921, n. 30 New.   (4) 28 Cyc., p. 199, n. 26, p. 200, n. 28.   (5) 28 Cyc., p. 212, n. 34 New. (6) 28 Cyc., p. 210, n. 16.   (7) 38 C. J., p. 722, n. 83 New.   (8) 28 Cyc., p. 210, n. 16.   (9) 15 C. J., p. 725, n. 83, p. 729, n. 49, p. 730, n. 50.

APPEAL from a judgment of the Superior Court of San Diego County. C. N. Andrews, Judge. Affirmed.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, Sloane & Sloane, F. G. Blood and Crouch & Sanders for Appellant.

S. J. Higgins, City Attorney, and Arthur F. H. Wright, Deputy City Attorney, for Respondent.

CURTIS, J.—The facts leading up to the judgment in this proceeding, it is conceded by appellant, are fairly summarized in respondent's opening brief, and as stated therein are as follows:

"On August 3, 1922, there was presented to the Board of Trustees of the then City of East San Diego a petition purporting to be signed by more than one-fourth of the qualified electors of said city, asking that an election be called upon the question of consolidating the cities of East San Diego and San Diego, which were adjacent. This petition was filed pursuant to the terms and provisions of the Municipal Consolidation Act of 1913 (Stats. 1913, p. 577, Deering's General Laws, Act 2383a). The petition was referred by the board of Trustees to the City Clerk of East San Diego, who was directed to investigate the sufficiency of the petition.

"On September 7th, 1923, the Clerk reported to the Board of Trustees that the petition 'showed a total of 733 sufficient signatures.' Thereupon the Trustees by resolution declared the petition insufficient. Thereafter, during the month of October, 1922, Dora V. Drumhiller and Mattie Benbow, residents, electors and taxpayers of the City of East San Diego instituted a proceeding in the Superior Court of the County of San Diego, wherein the court was asked to issue a peremptory writ of mandate directing the Board of Trustees of the City of East San Diego to forthwith call a special election for the purpose of submitting to the electors of said City of East San Diego the question of consolidating the City of San Diego with the City of East San Diego, and on the 26th day of March, 1923, a judgment in said action

was rendered by the Superior Court of the County of San Diego in favor of said petitioners, and a peremptory writ of *mandamus* was issued compelling the Board of Trustees of the City of East San Diego to call a special election, as petitioned for on the 7th day of September, 1922. In this proceeding the sufficiency of the petition was gone into by the court, and after the presentation of evidence the Court determined that the petition had been signed by more than one-fourth of the qualified electors of the City of East San Diego. The Court found that while the Trustees had not been guilty of actual fraud, nevertheless they had been guilty of abusing their discretion in that they had arbitrarily disregarded names which should have been considered, and that this was done without warrant of law.

"Pursuant to this writ of *mandamus* the Board of Trustees called the special election which was held in the City of East San Diego on the 26th day of June, 1923, at which election a majority of the voters of East San Diego voted in favor of consolidating with the City of San Diego.

"Thereafter a special election was held in the City of San Diego on the 23rd day of October, 1923, at which time the electors of the City of San Diego voted in favor of the question of consolidation, and on the 29th day of December, 1923, a certificate of said election and a record of the proceedings was filed with the Secretary of State, and thereupon the City of San Diego proceeded to take over, assume and exercise municipal jurisdiction over the territory formerly comprising the City of East San Diego.

"Thereafter on the relation of one William Edward Ryan, the Attorney-General of the State of California instituted this present proceeding of *quo warranto* to test the validity of the election held in East San Diego and to inquire into the authority of the City of San Diego to exercise municipal jurisdiction over the territory formerly comprising the City of East San Diego.

"In the Court below the City of San Diego in defense of its jurisdiction presented two contentions: First, that the State of California, either on its own initiative or upon the relation of some taxpayer was estopped to inquire into the validity of the election upon the grounds set forth in the complaint in *quo warranto* of the Attorney-General, namely,

the insufficiency of the petition, for the reason that the question of the sufficiency or insufficiency of the petition had been determined by a court of competent jurisdiction of the State of California, and that the question had become *res adjudicata.* Second, that the complaint in *quo warranto* did not state a cause of action in *quo warranto.* The Court below held that the people of the State of California were bound by the former judgment, and thereupon rendered judgment in favor of the City of San Diego, from which judgment the relator now appeals.''

In behalf of the appeal appellant contends: First, that the former judgment, if valid, was not an estoppel against the People of the State of California to maintain an action in *quo warranto* for the reason that the People were not parties to nor represented in said action; and, second, that the superior court of San Diego County was without jurisdiction in the *mandamus* proceeding, relied upon by the defendant as an estoppel in this action, to review the action of the board of trustees of the City of East San Diego in finding the petition for the consolidation proceedings insufficient for want of the required number of qualified signers.

In support of the action of the trial court in holding that the People of the State of California were estopped by the judgment in the *mandamus* action instituted by Dora Drumhiller and Mattie Benbow against the board of trustees of the City of East San Diego, respondent relies in the main upon the case of *People* v. *Holladay,* 93 Cal. 241 [27 Am. St. Rep. 186, 29 Pac. 54], and other rulings of our supreme court following *People* v. *Holladay.* The Holladay case was instituted by the attorney-general in the name of the People of the state, upon the relation of one Bryant to determine the right of S. W. Holladay, the defendant in said action, to maintain certain buildings and fences upon a tract of land situated in the city and county of San Francisco, and claimed by the plaintiff in said action to have been dedicated to the public as a public square, and known as Lafayette Park. The defendant Holladay in his answer denied that the land in question had ever been dedicated to the public as a public square and further alleged that prior to the beginning of said action by the People of the State of California he had instituted an action against the city and

county of San Francisco to quiet his title to said tract of
land and that judgment had been rendered in said prior ac-
tion, quieting his title to an undivided nineteen-twentieths
of said land as against said city and county, and plead said
judgment as a bar to the later action instituted in the name
of the People of the State of California. On appeal the su-
preme court, in the course of the opinion rendered therein,
on page 247 (29 Pac. 56) thereof, asks the following ques-
tions: "The pleadings in that case (*San Francisco* v. *Hol-
laday*), being sufficient to put in issue the question of dedica-
tion involved herein, what is the effect of such judgment
upon the rights of the present plaintiff? Are the People of
the state thereby estopped from asserting that the defendant
in that action, the city and county of San Francisco, did
hold and now holds the legal title to the land in controversy
in trust for the use of the people of the state as a public
square?" These questions are answered by the court in
the following manner on page 249 of said opinion: "We
entertain no doubt that the city and county of San Fran-
cisco has the authority to maintain an action for the purpose
of preserving the rights of the general public to the use of
squares, or land claimed as such, within its limits, and that
in such action it is authorized to put in issue the alleged
rights of the people to such easement, and that the state
itself is bound by the result of such litigation, if the same
is not collusive. And we see no reason why these same rights
might not also be tried and determined in an appropriate
action in which the municipality might be a defendant—as,
for instance, ejectment, where it had ousted the claimant
from the possession; or by injunction, where it threatened
to remove his buildings or trees or a portion of the soil
from land claimed by it as a public square—and the public
would be bound by the final judgment therein if the action
was conducted in good faith on the part of the city. The
rule that the citizen shall not be twice vexed for the same
cause of action is as binding upon the state as upon other
litigants; and the legislature, in conferring upon the city
power to maintain and defend in the courts the rights of
the state to streets and squares within its limits, must be
presumed to have done so with reference to this well-known

maxim, and to have intended that the state should be bound by the result of such litigation.''

The case of *People* v. *Holladay, supra,* has been cited with approval in a number of later cases by the courts of this state.

*People* v. *Smith,* 93 Cal. 490 [29 Pac. 57, 247], was an action instituted by the people of the state of California upon the relation of one Chandler to remove certain obstructions upon land claimed to be a public street of the city of San Francisco. The trial court rendered judgment in favor of plaintiff, but on appeal the supreme court reversed the judgment on the ground that a judgment rendered in a prior action in favor of Smith, the defendant, against the city and county of San Francisco, was a bar to said action instituted in the name of the people. The supreme court in this case said as follows: ''At the trial, among other matters, the defendant introduced in evidence a judgment roll in the action of *A. B. Smith* v. *The City and County of San Francisco,* . . . As one of its findings of fact, the court found that the allegations of the defendant's answer, as to the matters therein set forth with reference to the action brought by Smith (the defendant here) against the city and county of San Francisco, were true, but held that the people of the state were not a party to said action, and that consequently the judgment therein rendered was no bar to this action, and thereupon ordered judgment for plaintiff. This identical question was involved in the recent case of *People* v. *Holladay, supra,* p. 241, and there decided contrary to the views held by the trial court in this case. The judgment being a complete bar to the cause of action, it becomes unnecessary to examine other assignments relied upon. Upon the authority of *People* v. *Holladay,* the judgment and order are reversed.''

In *Strand Improvement Co.* v. *Long Beach,* 173 Cal. 765 [161 Pac. 975], the court in discussing the effect of a judgment rendered against the city of Long Beach, uses the following pertinent language: ''The judgment is a determination, conclusive upon the city and the public, that the land in question is free from public use. . . . It bars both the city and the state.'' (Citing *People* v. *Holladay, supra,* and other cases.)

In the late case of *Guaranty Trust & Sav. Bank* v. *City of Los Angeles*, 186 Cal. 110, 118 [199 Pac. 35, 39], upon the authority of *People* v. *Holladay, supra*, the court states the law upon this question as follows: "Such a judgment declaring that property held by a city for public use is the property of a private individual is, after it has become final, conclusive upon the city and the public." Two other late cases from our supreme court, although not decided directly upon the authority of *People* v. *Holladay*, are pertinent to the question before us, and they may aid in its solution. The first of these cases is *Bernhard* v. *Wall*, 184 Cal. 612, 623 [194 Pac. 1040]. In this action the validity of certain patents to state school lands was involved. It became necessary for the court in this action to pass upon the effect of a judgment rendered in a former action against the surveyor-general of the state, commanding him to receive and file an application to purchase said lands. In deciding this case the supreme court said: "Unquestionably that judgment was a final adjudication of the right of Bernhard binding on the surveyor-general in his official capacity. He is the state official in charge of all matters pertaining to the disposal of the public lands of the state. . . . In any proceeding against him to compel him to perform an official duty in disposing of the public land, he represents the state and the judgment rendered in such proceeding is in all respects final and conclusive against the state to the same extent that it binds the officer in his official conduct with respect to the matter decided. Such a judgment bars the state from afterwards setting up to the contrary of what is there adjudicated." In *Reynolds* v. *Churchill Co.*, 187 Cal. 543, 546 [202 Pac. 865, 866], the court said in deciding a similar question, "We have reached the conclusion that the *mandamus* proceedings are conclusive of the rights of the respondent to purchase the land under its certificates of purchase. In the *mandamus* proceedings the surveyor-general of the state of California represented the state, and the judgment in the case as to the validity of the defendant's certificate of purchase is binding upon the state."

As against these authorities, appellant has cited the following cases from the courts of our own state: *People* v. *Rodgers*, 118 Cal. 393 [46 Pac. 740, 50 Pac. 668]; *People*

v. *Bass,* 15 Cal. App. 62 [113 Pac. 695]; *People* v. *Linda Vista Irr. Dist.,* 128 Cal. 477 [61 Pac. 86]; *People* v. *Beaudry,* 91 Cal. 213 [27 Pac. 610]; and also the following cases from other jurisdictions: *Peck* v. *State,* 137 N. Y. 372 [33 Am. St. Rep. 738, 33 N. E. 317]; *State* v. *Stock,* 38 Kan. 154 [16 Pac. 106]; *State* v. *Burton,* 47 Kan. 44 [27 Pac. 141]. We will briefly refer to these cases. *People* v. *Rodgers, supra,* was an action instituted in the name of the people of the state of California by the attorney-general upon the relation of one Warren T. Drew, for the purpose of ousting the defendant Rodgers from the office of the chief of police of the city of Sacramento. The court admitted in evidence the judgment-roll in the case of *Drew* v. *Rodgers,* the latter case having been instituted by an elector of said city, named Drew (although of the same name, he was not the relator in the action of *People* v. *Rodgers*) to contest the election of Rodgers for the same office as that involved in the proceeding of *People* v. *Rodgers.* The supreme court held that this was error as ''The judgment was not between the parties to the present action, nor was it between the relator and the defendant.''

*People* v. *Bass, supra,* was an action in *quo warranto* brought by the attorney-general, claiming that the defendant Bass had usurped and was unlawfully holding the office of supervisor of the county of Lassen. Bass filed an answer alleging that Leavitt, the relator, had, after a trial of an action entitled *Bass* v. *Leavitt* (instituted under section 1124, Code Civ. Proc., providing for the contesting of an election where the result was a tie vote)', consented to the holding of a special election and at said election became a candidate for said office, and claiming that by said acts and conduct ''Leavitt had abandoned his contest then pending in the superior court and was estopped from resorting to this or any other proceeding to gain possession of said office.'' The court, upon this state of facts, held that the action then pending ''is by the people, who are entirely different parties from those who were parties to the contest, and who cannot be estopped by the conduct or acts of Leavitt, either in the original contest or subsequent thereto. He could not, by consenting to the special election, estop the people from disputing the declared result or from inquiring

into the validity of the certificate given to Bass." We fail
to find anything in either *People* v. *Beaudry, supra,* or *Peo-*
*ple* v. *Linda Vista Irr. Dist., supra,* which is of any great
service in the decision of the question now under considera-
tion. In our opinion, if these cases can be considered as
authorities in the present action, they are favorable to re-
spondent's rather than appellant's contention. In fact, if
we understand appellant's position correctly, the most that
can be claimed for any of the authorities above referred to,
from the courts of our own state, is that the principle con-
tended for by appellant is recognized by the court in these
cases.

Turning now to the authorities from other jurisdictions,
cited by appellant, we will first consider the case of *State* v.
*Stock, supra,* decided by the supreme court of the state of
Kansas. In this case, the question involved was the legality
of an election called for the purpose of locating the county
seat of Rush County. It was instituted in the name of the
state, upon the relation of the attorney-general, against the
county officers of said county, to compel them to remove
their several offices from the town of La Crosse to Walnut
City. As a defense to said action the defendants pleaded
a judgment previously rendered in an action instituted by
the state of Kansas upon the relation of an elector and tax-
payer of said county, named Hammond, against F. E. Gar-
ner, county clerk of said county, for the purpose of compel-
ling said county clerk to remove his office from Walnut City
to the town of La Crosse. It was claimed in said action
that the county seat of said county had been located at the
town of La Crosse, and by said judgment it was decreed
that the town of La Crosse was the legal county seat of said
county and said county clerk was directed to remove his
office thereto, and thereafter to keep the same at said town
of La Crosse. The supreme court of the state of Kansas held
that the judgment rendered against the county clerk of the
action brought against him in the name of the state of Kansas
upon the relation of said Hammond was not a bar to the
subsequent action brought by the state of Kansas upon the
relation of the attorney-general against the county officers
of said county. The real point considered and decided in
that case was whether, in an action brought by the state

upon the relation of the attorney-general, the state was concluded by a judgment rendered in an action instituted by the state upon the relation of a private person. The supreme court held that the prior action, instituted in the name of the state by a private person under the statute of the state of Kansas, permitting such an action to be brought by any elector who considered himself aggrieved by the result of any election held for the purpose of relocating the county seat, was a proceeding begun by a private person, and that the state was not concluded nor bound by the judgment rendered therein. No such question is involved in the present action. In the Kansas case, the question whether or not the county clerk represented the state, so that a judgment against him was binding upon the state, was neither discussed nor decided.

In the case of *State* v. *Burton, supra,* also decided by the supreme court of the state of Kansas, precisely the same point was before the court and decided by it upon the authority of *State* v. *Stock, supra.* ·

In *Peck* v. *State, supra,* the New York court of appeals held that the state was not bound nor estopped by a judgment rendered against the board of managers of the Buffalo state asylum. The action was brought to recover upon a claim for materials furnished in the construction of the asylum. A contract had been entered into between plaintiffs and the said board of managers, whereby plaintiffs agreed, for a stated consideration, to furnish said materials. A dispute arose between plaintiffs and said board of managers as to the amount due plaintiffs. As a result of said dispute, plaintiffs instituted an action and obtained a judgment in *mandamus* against the board of managers, requiring them to issue a certificate in favor of plaintiffs showing the amount due plaintiffs. Plaintiffs thereafter brought suit against the state to enforce their claim, and rested their claim upon the judgment rendered against the board of managers and the certificate of said board issued in compliance with the requirements of said judgment, and introduced no further evidence in proof of their claim. On appeal, a judgment in plaintiffs' favor was reversed, the court stating the law to be as follows: "A State cannot be sued in its own courts, except by its consent; and this rule is

founded upon public policy of great importance, and it would be greatly impaired, and could be largely nullified, if the state could be bound by judgments rendered against its agents or officers. Such judgments may bind the officers, and compel them to discharge their duties, and thus frequently they enable claimants to obtain payment of their claims against the state and other rights to which they are entitled by law. But the adjudication in such actions never estops the state on the principle of *res adjudicata*.'' (Citing authorities.) Appellant insists that the rule enunciated by the New York court is applicable in the present case and should be followed to the exclusion of the decisions rendered by the supreme court of our own state. If there is any conflict between the decisions of the courts of other states and those from our own, it is of course the duty of this court to accept and follow the rulings of our own supreme court. We doubt, however, whether any such conflict exists. In the case of *Peck* v. *State, supra,* the controversy grew out of a purely and strictly state matter. The claim of the plaintiffs in that action represented a demand against the treasury of the state of New York. While it was based upon a contract, which the board of managers of the Buffalo state asylum had authority to make on behalf of the state, yet its payment, if finally adjudged by the court, rested with the state of New York and must be made with state funds. It was, therefore, an action in the outcome of which the state was primarily and vitally interested, and in this respect it materially differs from the case of *People* v. *Holladay, supra.* In the Holladay case the court held that the state had conferred upon the city of San Francisco jurisdiction over the public squares within its territorial limits, and that the ownership of such squares was a matter principally of municipal concern, and, therefore, that a judgment against said municipality as to the ownership of any particular piece of land claimed to be a public square was binding upon the state and the public. The other cases from our supreme court, and to which we have already alluded, were decided upon practically the same principle. In each of these cases the state had conferred upon the municipality, or officer, jurisdiction over the subject matter of the controversy, and for that reason our courts have held that in any litigation

involving such subject matter, the municipality, or officer, represented the state, and that the latter is bound by any judgment rendered against its representative. In our opinion, therefore, there is no conflict between the decision of *Peck* v. *State, supra,* and the rulings of the courts of our state.

[1] The rule to be drawn from these decisions would therefore appear to be that when the judgment against an officer or agency of the state is pleaded as a bar in a proceeding instituted by the state, the state is not bound by said judgment when the same involves a purely state matter, but when the judgment relates to a matter of municipal concern, and to a matter, jurisdiction over which the state has committed to the administration of a municipality or officer, then such municipality or officer represents the state in said action and said judgment is binding and conclusive upon the state. [2] In applying this rule to the facts in the present controversy, it becomes necessary to determine the nature of the subject matter involved in the *mandamus* action. Was it a matter in which the state was chiefly concerned and did the judgment in said action affect the state primarily and directly, or was it a proceeding in which the City of East San Diego was principally concerned, and will the result of said action more directly affect said city and its inhabitants? We think it quite evident that the controversy involved in said action was of but secondary concern to the state as a whole. The decision of the question involved therein one way or the other, was of but little importance to the state at large. [3] It is true that the state in its governmental capacity has a general interest in seeing that a proper observance is accorded to all of its laws by the people of the state, and particularly by its officers and such agencies as it has constituted for the better administration of such laws, but this general interest does not constitute the state a party in interest in every proceeding instituted for the purpose of enforcing said laws or of determining whether they are in all instances complied with. On the other hand, the only parties vitally and directly interested in the question of whether or not the Cities of San Diego and East San Diego shall be consolidated, are these two municipalities and their inhabitants. If there are any

benefits to accrue from such consolidation, such benefits will
be reaped solely by the people of these two communities.
At the same time, if there are any burdens growing out of
such union, such burdens will fall to the lot of the people
of the enlarged municipality of the City of San Diego.
Neither the state at large nor any of its inhabitants, outside
of those residing, or owning property, in said city, will be
affected by the result of the proceedings to unite these two
cities.   The question is therefore, in our opinion, one of local
concern rather than one of state interest.   We think that
the state has recognized this fact in the nature of the pro-
visions adopted by it governing the consolidation of munici-
palities.   The provisions made by the state of California
upon this subject are those found in the act under which
the proceedings here in question were instituted.   (An act
to provide for the consolidation of municipal corporations,
Stats. 1913, p. 577; Deering's General Laws, 1923 ed., Act
5166, p. 1939.)   In this act it is provided that whenever
a petition signed by one-fourth of the qualified electors of
a city is presented to the legislative body thereof, asking
that such municipal corporation and any other municipal
corporation contiguous thereof, designated in such petition
and having a greater population, be consolidated, said legis-
lative body shall call an election and submit to the electors
thereof the question of consolidation.   The act further pro-
vides that said legislative body shall cause notice of the
holding of such election to be given to the electors of said
city.   Said legislative body shall establish voting precincts
in said city to be used in said election and appoint election
officers to conduct said election.   It shall canvass the returns
of said election and declare the result thereof, and cause a
record thereof to be made in its minutes.   If the result of
said election is in favor of consolidation, the clerk of said
legislative body shall make a duplicate copy of the record
of said canvass and deliver the same to the clerk of the
municipal corporation with which consolidation is sought.
It then becomes the duty of the last-named municipal corpo-
ration to call and hold an election and submit to its electors
the question of consolidation.   [4]   It will thus be seen that
by this statute a complete plan or scheme has been provided
by the legislature of the state for the consolidation of

municipal corporations, in which the legislative bodies of the
cities sought to be consolidated are clothed with all the au-
thority necessary to carry into effect said plan or scheme.
In the exercise of this authority, the legislative body of the
city in which said proceedings have their inception is the
agent of the state and represents the state in every stage
of the proceedings, from the time the original petition is
filed with it until the final record of the canvass is made in
its minutes. In the class of municipal corporations to which
the City of East San Diego belonged, this legislative body
is the board of trustees of said city. [5] Our conclusion,
therefore, upon this branch of the case is that as the matter
involved herein is of municipal interest primarily, and not
of general state concern, and as the state has clothed the
board of trustees of the City of East San Diego with author-
ity to represent it in all consolidation proceedings, that it
is bound by the acts of its agent in such proceedings, and
by any judgment of a court of competent jurisdiction ren-
dered against said board of trustees directing it to perform
the duties enjoined upon it by the statute providing for
said proceedings.

[6] The second point made by appellant is that the su-
perior court of the county of San Diego was without juris-
diction in the *mandamus* proceeding to review the action of
the trustees of the City of East San Diego, in its determina-
tion that the petition for consolidation was insufficient for
the want of the required number of qualified signers. The
*mandamus* proceeding was directed against the board of
trustees requiring them to call an election on the ground
that a valid petition had been filed with said board, asking
for the consolidation of the two municipalities. Upon the
filing of such a petition the statute governing consolidation
of cities, heretofore referred to, provides that said legislative
body shall without delay call a special election and submit
the question of consolidation to the electors of said city.
Upon the failure of said legislative body to call said election
the superior court, upon complaint of any person aggrieved
thereby, is authorized to compel said board to act upon said
petition as required by law. This authority is conferred
upon the court by section 1085 of the Code of Civil Pro-
cedure providing for the issuance of the writ of *mandamus*.
Said section provides that such a writ may be issued by the

court to any board to compel the performance of an act which the law specially enjoins. As we have seen, the law specially enjoins upon the board of trustees the calling of the election when a valid petition has been filed. [7] The authority with which the court is vested to compel the calling of the election by the board necessarily implies that the court has authority to determine whether all the necessary preliminary steps have been taken which would make it obligatory upon the board to issue the call for the election. In this case these necessary steps include a valid petition to be filed with the board of trustees. For the purpose of this decision we may concede that a valid petition, according to the terms of the statute and the rulings of our courts upon these and similar statutes, is a petition that has been found sufficient by the board of trustees. (*People* v. *Town of Loyalton,* 147 Cal. 774 [82 Pac. 620]; *People* v. *Los Angeles,* 133 Cal. 338 [65 Pac. 749]; *People* v. *Town of Ontario,* 148 Cal. 625 [84 Pac. 205].) [3] The determination by the board as to the sufficiency of the petition was final and conclusive and the court could not go beyond or behind the action of the board, except in case of fraud, and no charge of fraud was made against the trustees of said City of East San Diego. But the court, in order to determine whether it shall issue its writ of *mandamus,* must first ascertain whether there has ever been filed with the board of trustees a valid petition as provided by the statute and as defined by the above decisions from our supreme court. Unquestionably if in such an action it be shown that a petition, valid in the sense we are here considering it, had been filed with the board of trustees, then not only would the court have jurisdiction of the matter, but it would be its duty to issue its writ compelling said board to act upon said petition in the manner provided by law. If the court is vested with jurisdiction to determine the fact that a valid petition has been filed, does it lose jurisdiction of the action upon proof of the fact that no valid petition has been filed? "Jurisdiction is the power to hear and determine." (7 Cal. Jur. 584; *Bennett* v. *Wilson,* 133 Cal. 379, 385 [85 Am. St. Rep. 207, 65 Pac. 880]; *Crew* v. *Pratt,* 119 Cal. 139, 148 [51 Pac. 38].) As was said by the court in *Baines* v. *Zemansky,* 176 Cal. 369, 373 [168 Pac. 565, 567], "Under well-established principles of law it cannot be denied that

if the Superior Court has jurisdiction, upon any possible state of facts, to prohibit or enjoin the registrar of voters from proceeding with such recall petitions in the manner prescribed in the charter, the sufficiency of the petition or complaint upon which that court acts, so far as the facts stated therein are concerned, cannot be inquired into by this court in this collateral proceeding, but that, on the contrary, its writs and orders must be upheld so far as this case is concerned, and can only be questioned when presented by way of appeal after the final judgment of said court in the cause." We have already seen that there was a "possible state of facts" upon which an action against the board of trustees of the City of East San Diego, to compel said board to call an election, might have been based. This state of facts consisted of the filing of a sufficient petition with said board, and its refusal to call an election as required by law. These facts were alleged in the complaint in the *mandamus* action, and by virtue thereof the court acquired jurisdiction to hear and determine the cause of action as alleged. The court, in such an action, would have power to pass upon the question and determine whether or not a valid and sufficient petition had been filed and to render its judgment either that the writ issue or be denied, according to the facts of the case. We do not mean by this that the court could determine the sufficiency of the petition, except by accepting the determination already reached by the board of trustees. As we have already seen, the determination by the board of trustees, as to the sufficiency of the petition, was final and the court must abide by such determination. If, however, the court, upon the hearing of said action, acted otherwise and sought other and additional evidence upon this subject, this might be error on the part of the court, but it would not be such error as would affect its jurisdiction. [9] Having acquired jurisdiction to hear and determine the cause, it has power to decide the cause incorrectly as well as correctly. (*Dahlgren* v. *Superior Court*, 8 Cal. App. 622 [97 Pac. 681].) "Jurisdiction is the power to hear and determine, and does not depend upon the rightfulness of the decision made." (*Scherer* v. *Superior Court*, 96 Cal. 653 [31 Pac. 565].) As was said in the case of *People* v. *Holladay, supra*, "The judgment in *Holladay* v. *City and County of San Francisco*, and which

we hold to be equally binding upon the state as upon the city of San Francisco, was undoubtedly erroneous under the law as declared by this court, subsequently, in the cases of *Sawyer* v. *San Francisco,* 50 Cal. 370, and *Hoadley* v. *San Francisco,* 70 Cal. 324 [12 Pac. 125], but its force as an adjudication of the rights of the parties thereto, and those in privity with them, is not affected thereby. (*Case* v. *Beauregard,* 101 U. S. 688, 25 L. Ed. 1004, see, also, ·Rose's U. S. Notes.)''

The court also in the case of *Baines* v. *Zemansky, supra,* on page 373, states the rule to be, ''If that court has jurisdiction, it may decide the wrong as well as the right in the matter, and its decision is binding on all other persons, officers, and courts, save upon an appeal to the court having appellate jurisdiction of the cause.'' The superior court of the county of San Diego, having jurisdiction to hear and determine said *mandamus* proceeding, its judgment therein, even if erroneous, when not appealed from, was binding and conclusive upon the parties thereto, in the same respect as it would have been had said judgment been free from error.

The attorney-general relies with much assurance upon the cases of *Baines* v. *Zemansky, supra,* and *Watts* v. *Superior Court,* 36 Cal. App. 692 [173 Pac. 183], as well as on the other authorities cited in his brief in support of his second contention. We will only refer, and that briefly, to the two cases of *Baines* v. *Zemansky* and *Watts* v. *Superior Court.* The court in these two cases had under consideration proceedings which were in many respects similar to the *mandamus* action involved in the present case, and in each of these cases the court held that the superior court was without jurisdiction in the particular proceeding before it, but the proceeding involved in each of those cases is distinguishable from the one now before us in a very material and essential particular. Each of these proceedings was a direct attempt to have the court substitute its action for that of the officer in a matter in which the determination of the officer was final and conclusive. In other words, it was a direct attack upon the determination of the officer, whose action the statute made final and conclusive, and over whose action the court could have no jurisdiction under any possible state of facts. The action in *mandamus,* involved in the present proceeding, was directed against the board of

trustees of the City of East San Diego, not to review the action of the board in reference to the petition filed with them, but was a proceeding directed against the members of said board to compel them to perform a duty enjoined upon them by law, to wit, the calling of an election, and was based upon a statement of facts which, if true, entitled the plaintiff therein to the relief prayed for. These authorities cannot be considered as controlling the action of the court in the present action, as they were decided upon a state of facts differing materially from those before us.

Judgment affirmed.

Conrey, P. J., and Houser, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 23, 1925.

All the Justices present concurred.